**BOB HAMRIC CHEVROLET, INC., Plaintiff,**

v.

**USA, INTERNAL REVENUE SERVICE, Defendant.**

No. A–92–CA–194–SHC.

United States District Court,
W.D. Texas,
Austin Division.

March 18, 1994.

502

Alan L. Tinsley, Redding, Coselli, Tinsley & Allie, LLP, Houston, TX, for plaintiff.

Dinah L. Bundy, Atty., Tax Div., Dept. of Justice, Dallas, TX, for defendant.

### MEMORANDUM OPINION AND ORDER

CAPELLE, United States Magistrate Judge.

The Court held a hearing on October 19, 1993, in the above styled and numbered case on the Plaintiff Bob Hamric Chevrolet, Inc.'s Motion for Summary Judgment filed on August 30, 1993 (# 24) (hereinafter "Hamric") and on the United States of America's Motion to Dismiss or for Summary Judgment filed on August 30, 1993 (# 22) (hereinafter "United States"). The parties consented under 28 U.S.C. § 636(c) to this Court's jurisdiction.

### I. THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Hamric asserts that the United States failed to follow the deficiency procedures set forth in 26 U.S.C. § 6211 prior to making an assessment against Hamric relative to Hamric's 1983 federal income tax liability. At the time of making the assessment against Hamric, Hamric asserts that the statute of limitations set forth in 26 U.S.C. § 6501 relative to his 1983 tax year had expired. Hamric asserts that the United States illegally and erroneously assessed Hamric $39,646 in taxes, $33,935.55 in interest and a failure to pay penalty in the amount of $594.34 for its 1983 tax year. Hamric filed a claim for refund on or about June 1, 1991, of these amounts related to calendar year 1983 with the Director of the Austin Internal Revenue Service Center at Austin, Texas, and on or about August 12, 1991, said Director mailed to Hamric a notice of disallowance of its claim for refund. On or about August 15, 1991, Hamric filed a Request for Reconsideration of the disallowance based upon an expired statute of limitations, and the Director mailed a second notice of disallowance to Hamric on or about November 12, 1993.

### II. THE UNITED STATES' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

The United States asserts that this Court lacks subject matter jurisdiction over this refund suit because Hamric failed to satisfy the prerequisites for a waiver of sovereign immunity; i.e., Hamric failed to timely file a claim for refund under the governing provisions of the law. Further, the United States asserts that it properly assessed the deficiency for the 1983 Form 1120 by using computational adjustment procedures; thus, the Internal Revenue Service ("IRS") was not required to issue a statutory notice of deficiency with respect to the 1983 deficiency. Finally, the United States asserts that the additional tax liability for the 1983 Form 1120 was timely assessed before the statute of limitations expired.

### III. THE PARTIES' STIPULATIONS OF FACTS

The parties agree that there are no genuine issues of material facts, and that the

claims between the parties should be disposed of by summary judgment. The following are the Stipulations of the parties filed on August 25, 1993 (# 21) in this case (referred to as "Parties' Stipulations"), and the Court has added findings of facts which it has determined from a review of all the pleadings and exhibits (referred to as "Findings of Fact"). The exhibits referred to are attached to the Parties' Stipulations. The Declaration of Linda Lopez, TEFRA Coordinator for the Austin Compliance Center, Internal Revenue Service, Austin, Texas, is attached to the United States' Motion to Dismiss.

1. Unix, Ltd. ("Unix") filed its Form 1065, U.S. Partnership Return of Income, for its taxable year ending December 31, 1982 ("1982 Unix Return"), with the Internal Revenue Service, Austin, Texas, on or about February 22, 1983. Unix reported ordinary loss of $1,199,000.00 on the 1982 Unix Return. A copy of the 1982 Unix Return (Pages 1–4 of 20 without the Schedule K–1s) is attached as Ex. 1.

2. Plaintiff Bob Hamric Chevrolet, Inc. ("Hamric") was a partner in Unix. A copy of Hamric's Schedule K–1, Partner's Share of Income, Credits, Deductions, etc.—1982 for Unix ("the 1982 K–1") is attached as Ex. 2.

3. Hamric filed its form 1120, U.S. corporation Income Tax Return, for its taxable year ending December 31, 1982 (1982 Form 1120"), with the Internal Revenue Service, Austin, Texas, on or about June 14, 1983. On its 1982 Form 1120, Hamric reported partnership loss of $199,813.35 from its interest in Unix, and that $99,813.35 was the amount of its Unix loss in excess of at risk amount in Unix. Therefore, Hamric used $100,000 of the Unix loss on its 1982 Form 1120. A copy of the 1982 Form 1120 is attached as Ex. 3; see the ninth page of Ex. 3, Statement 1.

4. Unix filed its Form 1065, U.S. Partnership Return of Income, for its taxable year ending December 31, 1983 ("1982 Unix Return"), with the Internal Revenue Service, Austin, Texas, on or about April 13, 1984. Unix reported ordinary income of $524,414.00 on the 1982 Unix Return. A copy of the 1983 Unix Return (pages 1–4 of 20 without the Schedule K–1s) is attached as Ex. 4.

5. A copy of Hamric's Schedule K–1, Partner's Share of Income, Credits, Deductions, et.—1983 for Unix (the "1983 K–1") is attached as Ex. 5. Hamric's Schedule K–1 for Unix for 1983 (the "1983 K–1") shows that Hamric's share of Unix partnership ordinary income for 1983 was 16.498% or $86,518.00. The 1983 K–1 states at the bottom that the "Amount of 1982 loss not deductible [sic] in 1982 due to at-risk limitation now deductible [sic] is $98,823.00." Ex. 5.

6. Hamric filed its Form 1120, U.S. corporation Income Tax Return, for its taxable year ending December 31, 1983 ("1983 Form 1120") with the Internal Revenue Service, Austin, Texas, on or about April 13, 1984. Hamric reported a loss of $12,596.00 entitled "Partnership Loss—Unix, Ltd." on its 1983 Form 1120. A copy of the 1983 Form 1120 is attached as Ex. 6; see the eighth page of Ex. 6, Schedule # 1.

7. Unix was subject to the partnership audit and litigation procedures set forth in 26 U.S.C. § 6221, *et seq.* (the "TEFRA Procedures"). Unix is referred to as the TEFRA partnership.

8. The tax matters partner of Unix executed several Forms 872–P, Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership, which were agreed to by the IRS. Copies of these Forms 872–P are attached as Ex. 7 through 11; Lopez Declaration, ¶ 6.

9. The IRS examined the 1982 Unix Return and the 1983 Unix Return. Lopez Declaration, ¶ 5.

10. The first Form 872–P for the 1982 Unix Return which extended the time to assess tax until December 31, 1986, was signed by the tax matters partner on December 12, 1985, and was signed on behalf of the Internal Revenue Service on January 6, 1986. Ex. 7. The second form 872–P for Unix relating to both the 1982 Unix Return and the 1983 Unix Return extended the time to assess tax until June 30, 1988, and was signed by the tax matters partner on September 19, 1986, and on behalf of the Internal Revenue Service on September 29, 1986.

Ex. 8. The third form 872–P for Unix relating to both the 1982 Unix Return and· the 1983 Unix Return extended the time to assess tax until December 31, 1988, and was signed by the tax matters partner on April 14, 1988, and on behalf of the Internal Revenue Service on April 19, 1988. Ex. 9. The fourth Form 872–P for Unix relating to both the 1982 Unix Return and the 1983 Unix Return extended the time to assess tax until June 30, 1989, and was signed by the tax matters partner on October 21, 1988, and on behalf of the Internal Revenue Service on November 1, 1988. Ex. 10. The fifth form 872–P for Unix relating to both the 1982 Unix Return and the 1983 Unix Return extended the time to assess tax until December 31, 1989, and was signed by the tax matters partner on May 19, 1989, and on behalf of the Internal Revenue Service on May 24, 1989. Ex. 11.

11. Hamric and the Internal Revenue Service entered into a settlement agreement for partnership adjustments for the 1982 and 1982 Unix Returns. This agreement, set forth on Form 870–P(AD), Settlement Agreement for Partnership Adjustments, was signed on behalf of Hamric and dated March 24, 1989, and accepted on behalf of the Commissioner of Internal Revenue on August 2, 1989. As a result of this settlement agreement, Hamric agreed to adjustments to partnership items originally reported on the 1982 and 1983 Unix Returns. Specifically, under the settlement agreement, only $419,650 of the $1,199,000 loss originally claimed on the 1982 Unix Return was allowed, and no change was made to the 1983 Unix Return (hereinafter referred to as the "Unix Settlement"). A copy of Hamric's Form 870–P(AD) is attached as Ex. 12.

12. Under the Unix Settlement, Hamric's distributive share of the $419,650 loss was allowed for Unix in 1982 was $69,934.67 (determined by multiplying the allowed Unix partnership loss by Hamric's interest in losses as shown on the 1982 D–1, 16.665%), not $199,813.35 as shown on the 1982 K–1. (Ex. 2) Accordingly, under the Unix Settlement, $129,878.68 of the 1982 Unix loss originally reported by Hamric on its 1982 Form 1120 was disallowed.

13. The 1982 Form 1120 and the 1983 Form 1120 were referred to the TEFRA unit of the Internal Revenue Service for a determination of changes to Hamric's tax liabilities for its 1982 and 1983 years as a result of the Unix Settlement. Lopez Declaration ¶ 7.

14. All information necessary for computing the adjustments to the 1982 Form 1120 and the 1983 Form 1120 to reflect Hamric's tax liability as a result of the Unix Settlement was available from the Unix Settlement, the 1982 and 1983 Unix Returns, the 1982 and 1983 K–1s, and the 1982 and 1983 Forms 1120. The Internal Revenue Service was able to compute the changes to the Hamric tax liabilities as a result of the Unix Settlement mathematically without further actual determinations at the partner level. Lopez Declaration ¶ 8.

15. The Internal Revenue Service computed the amount of the 1983 Unix loss allowed to Hamric under the Unix Settlement as $69,935.00. Lopez Declaration ¶ 9.

16. Upon reviewing the 1982 Form 1120, the Internal Revenue Service discovered that Hamric only used $100,000 of the $199,813 Unix loss allocated to it in 1982 based on the at-risk limitation. Lopez Declaration ¶ 10; Ex. 3.

17. The Internal Revenue Service did not challenge or redetermine Hamric's amount at risk in 1982.

18. The Internal Revenue Service concluded that the remaining $99,813 of the 1982 Unix loss was carried forward to the 1983 Form 1120. Lopez Declaration ¶ 11.

19. The Internal Revenue Service began its adjustment computation by reducing the loss of $199,813 shown on the 1982 Form 1120 to $69,935.00. If Hamric had used all the 1982 Unix Loss in 1982, the adjustment to the 1982 Form 1120 would have been an increase in income of $129,878.68 (Parties' Stipulation No. 10, $129,878.68 of the 1982 Unix loss was disallowed under the Unix Settlement.) However, since Hamric reported that the at-risk limitation allowed the use of only $100,000 of the 1982 Unix loss on the 1982 Form 1120, the adjustment to income in 1982 was calculated as the difference between the loss allowed under the Unix Settle-

ment ($69,935) and the loss used on the 1982 Form 1120 ($100,000), producing an adjustment equal to an increase in income of $30,065. Lopez Declaration ¶ 12. (Parties' Stipulation No. 3, Hamric only used $100,000 of the Unix loss on the 1982 Form 1120.)

20. Pursuant to the terms of the Unix Settlement, the adjustment to the 1982 Form 1120 was an increase in income of $30,065.00. A copy of the Internal Revenue Service letter and adjustment report relating to the Unix Settlement and Hamric's 1982 Form 1120 is attached as Ex. 13.

21. Since the 1982 Unix loss allowed under the Unix Settlement was less than the amount of loss used by Hamric on the 1982 Form 1120, there was no additional loss to carryover to the 1983 Form 1120 under the Unix Settlement. Lopez Declaration ¶ 14.

22. The remaining adjustment of $99,813 [the difference between the loss disallowed under the Unix Settlement of ($129,878.68) and the increase in income adjustment to the 1982 Form 1120, $30,065] would be reflected on the 1983 Form 1120 by disallowing the carry forward of the 1982 Unix loss to the 1983 Form 1120. Lopez Declaration ¶ 14.

23. In order to compute the effect of the Unix Settlement on Hamric's tax liability for the 1983 Form 1120, the Internal Revenue Service reviewed the terms of the Unix Settlement, the 1982 and 1983 Unix Returns, the 1982 and 1983 K–1s, and the 1982 and 1983 Forms 1120. Lopez Declaration ¶ 15.

24. On the 1983 Unix Return, Unix reported ordinary income of $524,414.00. Parties' Stipulation No. 4; Ex. 4. Hamric's share of the 1983 Unix income was $86,518.00. Ex. 5. Under the Unix Settlement, there was no change to the 1983 Unix Return. On the 1983 Form 1120 (Ex. 6), Hamric reported losses from Unix of $12,596.00.

25. A copy of the Internal Revenue Service's letter and adjustment report relating to the Unix Settlement and Hamric's 1983 Form 1120 is attached as Ex. 14.

26. Hamric did not file a statement with its 1983 Form 1120 identifying any partnership item from the 1983 Unix Return which it was treating inconsistently with the treatment on the 1983 Unix Return. Lopez Declaration ¶ 18.

27. Under the Unix Settlement, the Internal Revenue Service made two (2) adjustments to the 1983 Form 1120. First, Hamric was to report income from the 1983 Unix Return of $86,518; this was not changed by the Unix Settlement. Second, the loss carry forward from the 1982 Form 1120 was to be reduced to zero. The difference between the amount of income to be reported, $86,518, and the amount of Unix loss originally reported on the 1983 Form 1120 ($12,596), or an increase in income of $99,114, was the amount of the adjustment to the 1983 Form 1120 necessary to properly reflect Hamric's 1983 tax liability under the Unix Settlement. Although the amount of the 1982 Unix loss not used in 1982 was $99,813, Hamric only reduced the 1983 Unix income by $99,114. Therefore, the Internal Revenue Service adjustment only reflected the amount of loss used in 1983. Lopez Declaration ¶ 19.

28. During July, 1990, the Internal Revenue Service mailed notice of the computational adjustment to Hamric by way of letters transmitting the reports, Forms 4549–A, showing how the Unix Settlement affected the 1982 Form 1120 and the 1983 Form 1120. Lopez Declaration ¶ 20; Parties' Stipulation No. 11, Ex. 13; Parties' Stipulation No. 14, Ex. 14.

29. The adjustment report for the 1983 Form 1120 shows an adjustment for "UNIX, LTD. OTHER INCOME," as an increase in income of $99,114.00. The explanation of the adjustment states:

WE ADJUSTED YOUR CORPORATION RETURN IN ACCORDANCE WITH THE EXAMINATION RESULTS FOR THE PARTNERSHIP IN WHICH YOU ARE AN INVESTOR. WE HAVE ALSO ADJUSTED YOUR CARRYOVER LOSS FROM 1982 TO –0–.

Ex. 14 at page 2.

30. The Internal Revenue Service used the computational adjustment procedures to determine and assess the tax liability of Hamric as a result of the Unix Settlement. Lopez Declaration ¶ 21.

31. The Internal Revenue Service followed its usual procedures for computing a change in a partner's tax liability as a result of a settlement agreement entered into for a TEFRA partnership when it computed the adjustments to Hamric's 1982 and 1983 Forms 1120 as a result of the Unix Settlement and, under the computational adjustment procedures, sent this information to Hamric by letter with an adjustment report. Lopez Declaration P22.

32. The Internal Revenue Service did not issue a statutory Notice of Deficiency to Hamric relative to the adjustments to the 1982 Form 1120 or to the 1983 Form 1120.

33. Hamric contends that the Internal Revenue Service did not use the proper procedures in connection with the assessments relating to the 1983 Form 1120. Hamric does not dispute the dollar amount of the adjustments should the procedural question be resolved in favor of the United States (Internal Revenue Service).

34. On July 23, 1990, the Internal Revenue Service assessed the deficiency in income tax attributable to the Unix Settlement against Hamric for the 1982 Form 1120. The deficiency assessed was $5,043.00, with interest of $4,617.87. A copy of a Certificate of Assessments and Payments for the 1982 Form 1120 is attached as Ex. 15.

35. On July 23, 1990, the Internal Revenue Service assessed Hamric $39,646.00 in tax for the 1983 Form 1120 as a result of the Unix adjustments. Interest totalling $33,-935.55 and a failure to pay penalties of $594.34 were assessed for 1983 as a result of the Unix adjustments. A copy of the Certificate of Assessments and Payments for the 1983 Form 1120 is attached as Ex. 16.

36. Hamric paid the 1982 and 1983 deficiencies, plus interest and penalties during 1990 and 1991.

37. On or about June 4, 1991, Hamric filed form 1120X, Amended U.S. Corporation Income Tax Return, for 1983, seeking a refund of all taxes paid as a result of the assessment made related to the 1983 Form 1120, $39,646.00 (the "Claim for Refund"). A copy of the claim for Refund is attached as Ex. 17.

38. The grounds stated in the claim for Refund were:

FORM 4549 IS ATTACHED. THE TAXPAYER PAID THE ASSESSMENT ATTACHED. THIS CLAIM FOR REFUND IS BEING FILED AS TAXPAYER'S POSITION IS THAT THE STATUTE OF LIMITATIONS HAD RUN OUT, BOTH ON THIS TAXPAYER AND ON THE FLOW–THRU PARTNERSHIP (UNIX).

Ex. 17 at page 2.

39. The Claim for Refund was denied by the Internal Revenue Service by letter dated August 12, 1991.

40. By letter dated August 15, 1991, Hamric asked the Internal Revenue Service to reconsider the claim for Refund. A copy of this letter requesting reconsideration of the claim for Refund is attached as Ex. 18.

41. The grounds for reconsideration in said letter were stated as follows:

When Mr. Alan L. Tinsley, attorney, worked out the terms of the settlement with Mr. Glenn Keenon, Appeals Officer for the Service; all information indicated that the statute of limitations for 1983 was closed at the partnership level. *At that time, it was believed that the Service could not make assessments against an individual partner based on 1982 partnership losses taken in 1983.*

In light of the fact that I did not receive a statutory notice of deficiency, I believe that I am entitled to a refund of the 1983 payments. [Emphasis added]

Ex. 18.

42. The Internal Revenue Service did not change its position after receiving this request for reconsideration, and the Claim for Refund was denied. Parties' Stipulation No. 22.

43. The parties agree that the documents referred to in these stipulations and attached as exhibits are admissible as evidence in this case.

## IV. *ANALYSIS*

### A. Standard of Review under Fed. R.Civ.P. 12(b)(6).

Fed.R.Civ.P. 12(b)(6) authorizes the dismissal of a case for failure to state a claim upon which relief can be granted. A complaint should be dismissed when it "appear[s] to a certainty that the plaintiffs can prove no set of facts in support of their claims that would entitle them to relief." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir.), *cert. denied*, 498 U.S. 908, 111 S.Ct. 279, 112 L.Ed.2d 233 (1990). The Court "may not go outside the pleadings and must accept all well-pleaded facts as true, viewing them most favorably to the plaintiffs." *Id.* "'[T]he motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.'" *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983).

In a motion to dismiss for failure to state a claim, "the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, p. 299 (1990).

The Court determines that the United States' Motion to Dismiss should be denied and the matter be considered upon the parties' motions for summary judgment.

### B. Standard of Review under Fed. R.Civ.P. 56(c).

Rule 56(c) of the Federal Rules of Civil Procedure provides for summary judgment "if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show the moving party to be entitled to summary judgment as a matter of law." Rule 56(e) states: "When a motion for summary judgment is made and supported as provided in this rule an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing there is a genuine issue for trial."

Both movants and non-movants bear burdens of proof in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense; however, if the issue is one on which the movant does not bear the burden of proof at trial, summary judgment is warranted if the non-movant fails to make a sufficient showing to establish the existence of each element essential to its case. *Id.* at 322–23, 106 S.Ct. at 2552. In so doing, the moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2554. At that point, the burden shifts to the non-moving party to produce evidence in support of its claims or affirmative defenses by affidavits or by "'depositions, answers to interrogatories and admissions on file,' [to] designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553. The non-moving party must produce "specific facts" showing a genuine issue for trial, not mere general allegations. Fed.R.Civ.P. 56(e); *Gossett v. Du–Ra–Kel Corp.*, 569 F.2d 869, 872 (5th Cir.1978). The non-movant has failed to meet this standard if its response merely shows that "there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If no such evidence is produced, "[t]he moving party is entitled to a judgment as a 'matter of law.'" *Id.* at 323, 106 S.Ct. at 2552.

In deciding whether to grant summary judgment, the court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992); *Pharo v. Smith*, 621 F.2d 656, 664 (5th Cir.), *aff'd in part, remanded in part on other grounds*, 625 F.2d 1226 (5th Cir.1980); *Jacobs v. Provident Life*

*& Accident Ins.*, 837 F.2d 213, 215 (5th Cir. 1988).

The Court must substantively evaluate the evidence offered by the moving and non-moving parties to determine whether the evidence raises a "material" fact question which is "genuine." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) A fact question is "material" if it involves "disputes over facts that might effect the outcome of the suit under the governing law." *Id.* at 248, 106 S.Ct. at 2510; *see also James By James v. Sadler*, 909 F.2d 834, 837 (5th Cir.1990); *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir.1987), *cert. denied*, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987). Thus, the focus of the Court is upon disputes over material facts.

■ The material fact dispute must be " 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 106 S.Ct. at 2510. With all reasonable doubts resolved against the movant, the court only decides whether a factual dispute exists and does not resolve the controversy. *Jones v. W. Geophysical Co. of America*, 669 F.2d 280, 283 (5th Cir.1982), *aff'd in part, modified in part on other grounds*, 761 F.2d 1158 (1985).

The Fifth Circuit has concluded " '[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record evidence before the court.' " *James v. Sadler*, 909 F.2d 834, 837 (5th Cir.1990) (citing *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356).

## C. The issues presented.

1. *This Court lacks jurisdiction over this refund suit because plaintiff did not file a timely administrative claim for refund which is a prerequisite to a waiver of sovereign immunity.*

Section 26 U.S.C. § 7422(a) (emphasis added) states that:

No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected ... *until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.*

Section 7422(h) states that "[n]o action may be brought for a refund attributable to partnership items (as defined in section 6231(a)(3)) except as provided in section 6228(b) or section 6230(c)." Hamric seeks a refund attributable to a partnership item or affected item.

■ One of the terms or conditions to suit against the United States is the time within which a claim must be filed or a suit must be instituted. Failure to take the required action within the applicable period of time does not merely provide the United States a waivable defense to the action, it deprives the court of jurisdiction to hear the action at all. *Vernell v. U.S. Postal Service*, 819 F.2d 108, 110 (5th Cir.1987); *United States v. One 1961 Red Chevrolet Impala Sedan*, 457 F.2d 1353, 1357 (5th Cir.1972). The United States has waived its sovereign immunity for actions seeking refunds attributable to partnership items only if the conditions of § 6228(b)[1] or § 6230(c) are satisfied. *See* § 7422(h); *Anderson v. United States*, 93–1 U.S.Tax. Cas. (CCH) ¶ 50,360, 1993 WL 204605 (N.D.Cal.1993); *Brookes v. United States*, 20 Cl.Ct. 733, 66 A.F.T.R.2d (MacMillan) 90–5239, ¶ 90–5054 (1990). "Because tax refund suits are actions in which the sovereign has waived its immunity and consented to be sued, statutory provisions governing such suits are strictly construed." *Alexander v. United States*, 829 F.Supp. 199, 200–201 (N.D.Tex.1993).

The United States asserts and has shown in its pleadings and arguments that the deficiency for the 1983 Form 1120 was properly assessed pursuant to the computational ad-

---

1. The Plaintiff has not relied on the provisions of 26 U.S.C. § 6228 governing administrative ad-

justment requests in this case.

justment procedures because such deficiency was attributable to a partnership item which converted to a nonpartnership item by way of settlement, or an affected item that did not require any partner level factual determinations. 26 U.S.C. § 6230(a).[2] The exclusive means to challenge a computational adjustment (attributable to a partnership item or affected item) is set forth in 26 U.S.C. §§ 6230(c) & (d)(6). Section § 6230(c)(1)(A) provides:

> A partner may file a claim for refund on the grounds that—(A) the Secretary erroneously computed any computational adjustment necessary—(i) to make the partnership items on the partner's return consistent with the treatment of the partnership items on the partnership return, or (ii) to apply to a partner *a settlement,* a final partnership administrative adjustment, or the decision of a court in an action brought under 26 U.S.C. §§ 6226 or 6228(a)....

26 U.S.C. § 6230(c)(1)(A).

█ The statute governing claims for refund relating to computational adjustments under 26 U.S.C. § 6230(c)(1)(A) provides that such administrative claims "shall be filed within 6 months after the day on which the Secretary mails the notice of computational adjustment to the partner." 26 U.S.C. § 6230(c)(2)(A). The rules set forth at 26 U.S.C. § 6511 *et seq.* (the "regular refund procedures") do not apply to any credit or refund of an overpayment attributable to a partnership item or affected item. 26 U.S.C. §§ 6230(d)(6), 6511(g).

Furthermore, even if this refund action is deemed to fall outside of 26 U.S.C. § 7422(h) because it relates to an affected item, rather than a partnership item, 26 U.S.C. § 7422(a) makes clear that before a refund suit may be filed a claim for refund must be "duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." The provisions of law governing claims for refund of affected items and partnership items are set forth in 26 U.S.C. §§ 6230(c) & (d)(6). Therefore, the administrative claim for refund must be filed

within six (6) months after the notice of computational adjustment is mailed to the partner. *See* 26 U.S.C. § 6230(c)(2)(A).

█ It is undisputed that the Service mailed the notice of computational adjustment with respect to Hamric's 1983 Form 1120 during July, 1990. It is also undisputed that Hamric filed its claim for refund on or about June 4, 1991, more than 6 months after the Service mailed the notice of computational adjustment to Hamric. Accordingly, if the 1983 deficiency was properly assessed under the computational adjustment procedures, it is clear that Hamric has not filed a timely claim under the governing statute.

█ Since Hamric did not file a timely claim for refund, this refund suit must be dismissed for lack of subject matter jurisdiction. *Ogden v. United States,* 432 F.Supp. 214, 216 (S.D.Miss.1975), *aff'd,* 555 F.2d 134 (5th Cir.1977). Any action barred by the doctrine of sovereign immunity must be dismissed for lack of subject matter jurisdiction. *United States v. U.S. Fidelity Co.,* 309 U.S. 506, 512, 60 S.Ct. 653, 656, 84 L.Ed. 894 (1940); *Commercial Union Ins. Co. v. United States,* 928 F.2d 176, 180 (5th Cir.1991).

2. *The Service properly assessed the deficiency for the 1983 Form 1120 by way of the computational adjustment procedure and was not required to follow the deficiency procedures.*

a. *General Rules.* Partnerships are not subject to income tax. 26 U.S.C. § 701. However, in determining a partner's income tax, each individual partner must take into account his distributive share of partnership income, gains, losses, deductions, credits and other partnership items, when filing his tax return. 26 U.S.C. § 702(a). The character of any item of income, gain, loss, deduction or credit included in a partner's distributive share is determined by reference to the partnership. 26 U.S.C. § 702(b). Unix was subject to the TEFRA partnership procedures found at 26 U.S.C. §§ 6221 *et seq.*

---

**2.** Hamric seeks a refund for all taxes paid as a result of the assessment made related to the 1983

Form 1120, or $74,175.89, plus interest and attorney's fees and other allowable costs.

Although partnership items are required to be recognized and reported by the individual partners, 26 U.S.C. § 6221 states that the tax treatment of all partnership items is to be determined at the partnership level. Partnership items include those items which are "more appropriately determined at the partnership level than at the partner level," such as partnership aggregate and each partner's share of items of income, gain, loss, deduction or credit of the partnership. 26 U.S.C. § 6231(a)(3); 26 C.F.R. § 301.-6231(a)(3)–1.

Items reported on a partner's return that are not partnership items may nevertheless be influenced by partnership items. Thus, a change in amount, character, or timing of a partnership item may result in a change in these other items reported on a partner's return. These types of items are called "affected items" and are defined by statute as "any item to the extent such item is affected by a partnership item." 26 U.S.C. § 6231(a)(5).

b. *Procedures for Assessing Additional Liabilities from Partnerships.* "The term 'computational adjustment' means the change in the tax liability of a partner which properly reflects the treatment under this subchapter of a partnership item." 26 U.S.C. § 6231(a)(6). "A computational adjustment may include a change in tax liability that reflects a change in an affected item where that change is necessary to properly reflect the treatment of a partnership item." 26 C.F.R. § 301.6231(a)(6)–1T(a).

■ As a general rule, deficiency procedures do not apply to the assessment or collection of a computational adjustment. 26 U.S.C. § 6230(a)(1). Moreover, a settlement is usually applied to a partner by means of a computational adjustment and not under the ordinary deficiency and refund procedures. 26 U.S.C. §§ 6230(a)(2)(A)(ii)[3] & (c); *Harris v. Commissioner*, 99 T.C. 121, 126, 1992 WL 176438 (1992); *Powell v. Commissioner*, 96 T.C. 707, 712, 1991 WL 80646 (1991).

The purpose of section 6230(a)(2)(A)(ii) is to enable the Commissioner to collect amounts due as a result of settlements without the necessity of issuing a statutory notice of deficiency.... Moreover, after a settlement has been reached, the substantive partnership level issues have been resolved, and all that remains is the *mechanical procedure of applying such settlement to the partner.*

*Harris,* 99 T.C. at 126 (emphasis added).

■ In limited circumstances, the Service is required to follow the deficiency procedures set forth at 26 U.S.C. § 6211 *et seq.* (the "regular deficiency procedures") before assessing a deficiency arising from or related to a partner's settlement of partnership items with respect to its interest in a TEFRA partnership. The regular deficiency procedures apply to "any deficiency attributable to—(i) affected items *which require partner level determinations.*" 26 U.S.C. § 6230(a)(2)(A)(i). Therefore, the Service would only be required to follow regular deficiency procedures before assessing a deficiency against Hamric arising from the Unix Settlement if the deficiency was attributable to affected items which require partner level determinations.

In connection with questions relating to its jurisdiction, the Tax Court has on several occasions considered whether a disputed item is properly characterized as a "partnership item," an "affected item" or a "nonpartnership item." *See Maxwell v. Commissioner,* 87 T.C. 783, 787, 1986 WL 22033 (1986).

■ i. *Computational Affected Items.* *Maxwell* indicates that there are two different types of affected items. "The first type of affected item requires only a computational adjustment at the partner level, which can only be made at the conclusion of the partnership level proceeding." *Woody v. Commissioner,* 95 T.C. 193, 201–202, 1990 WL 121140 (1990) (citing *N.C.F. Energy Partners, et al. v. Commissioner,* 89 T.C. 741,

---

**3.** Section 6230(a)(2)(A) states that regular deficiency procedures (set forth in Subchapter B) "apply to any deficiency attributable to—(i) affected items which require partner level determinations, or (ii) items which have become non-partnership items (*other than by reason of § 6231(b)(1)(C)* [i.e., a settlement agreement between the Service and a partner]) and are described in § 623(e)(1)(B)."

744, 1987 WL 45298 (1987)). One example of an affected item which only requires a computational adjustment is the amount of a medical expense deduction, which is dependent on the taxpayer's adjusted gross income. The amount of the partner's adjusted gross income depends on the partner's share of partnership income or loss. Therefore, the amount of the medical expense deduction would be an affected item, which cannot be computed until the partnership proceeding is completed. *N.C.F. Energy,* 89 T.C. at 744. This type of affected item will be referred to as a "computational affected item." In the case of a computational affected item, the Service need not issue a statutory notice of deficiency because the deficiency determination is merely computational. *Woody,* 95 T.C. at 201–202.

■ ii. *Factual Affected Items.* "The other type of affected item is one that is dependent upon factual determinations (other than a computation) relating to an adjustment made at the partner level." *Woody,* 95 T.C. at 202; *N.C.F. Energy,* 89 T.C. at 745. These affected items require findings of fact peculiar to the particular partner; this type of affected item will be referred to as a "factual affected item". Examples of factual affected items include the addition to tax for negligence (findings required as to the partner' negligence), *N.C.F. Energy,* 89 T.C. at 745; addition to tax under 26 U.S.C. § 6661 (findings required as to partner's reasonable beliefs about litigation risks), *id.* at 746; a partner's amount at risk (findings may be required with respect to agreements made by the partner with third parties), *Roberts v. Commissioner,* 94 T.C. 853, 861, 1990 WL 77203 (1990); or with respect to questions relating to assumptions of liabilities by the partners, *Hambrose Leasing 1984–5 Ltd. Partnership v. Commissioner,* 99 T.C. 298, 309, 312, 1992 WL 210580 (1992). The Service is required to follow the regular deficiency procedures when making an adjustment relating to a factual affected item. 26 U.S.C. § 6230(a)(2)(A)(i); 26 C.F.R. § 301.-6231(a)(6)–1T(a); *Woody,* 95 T.C. at 202; *N.C.F. Energy,* 89 T.C. at 745.

■ c. *The Situation Here.* Hamric entered into a settlement agreement with the Service with respect to partnership items of Unix for 1982 and 1983 (the Unix Settlement). The Unix partnership items from the 1982 and 1983 Unix Returns became nonpartnership items by reason of the Unix Settlement. When the Service determined the effect of the Unix Settlement on Hamric's tax liabilities for its 1982 and 1983 Forms 1120, the Service followed the procedures that apply to computational adjustments. It did not use the regular deficiency procedures which could only apply to the deficiency assessed with respect to Hamric's 1983 Form 1120 if said deficiency was attributable to affected items requiring partner level determinations. Therefore, after reviewing the 1982 and 1983 Unix Returns, the 1982 and 1983 K–1s, the Unix Settlement, and the 1982 and 1983 Forms 1120, the Service calculated the change in Hamric's tax liability for 1982 and 1983 and mailed its adjustment reports to Hamric. The deficiencies so computed were assessed, notices of the computational assessments were mailed to Hamric, with respect to the 1982 Form 1120 and 1983 Form 1120. Statutory notices of deficiency were not sent to Hamric with respect to either the 1982 Form 1120 or the 1983 Form 1120. In this regard, the Service followed the usual procedure for adjusting a partner's tax liability as a result of a settlement of partnership items.

Hamric argues that such a partner level determination is required in order to account for the higher loss amount it took in 1983 of $12,596.00 versus the amount allowed under its 1983 Unix Schedule K–1 or $12,305.00; i.e., that such a difference may be due to losses and/or expenses incurred by Hamric at the individual partner level related to its investment in Unix which occurred in 1982 but were not deducted until 1983 due to various limitations or which were incurred and deducted in 1983, the write-off of its basis in Unix, or other items that require a partner level determination. Hamric gives no specific examples of amounts which actually caused the difference in losses; it states that only the possibility of such occurrences requires a factual partner level determination and demands that deficiency procedures be followed.

Further, in its Response at page 4, Hamric asserts: "The Unix Settlement did not state that the partners were not entitled to any other deductions that may be applicable to Unix and incurred at the individual partner level." The United States agrees that the Unix Settlement contained no such statement. Reply, p. 4. However, Hamric does not specify what other deductions are referred to by this statement. The Unix Settlement is binding on Hamric and the United States, and he cannot challenge here the determination of partnership items in such a settlement. *Alexander v. United States*, 829 F.Supp. at 201–202 (citing with approval *Korff v. Commissioner*, 65 T.C.M. (CCH) 1811, T.C.M. (P–H) ¶ 93,033 at 93–129, 1993 WL 17614) (Jan. 28, 1993)). " 'Once mutually executed, Form 870–P settlement agreements are binding on their terms, unless a party to the agreement can show "fraud, malfeasance, or misrepresentation of fact." ' " *Alexander*, 829 F.Supp. at 202 (citing *Korff*, T.C.M. (P–H) ¶ 93,033 at 93–129). The Unix Settlement is set forth on a Form 870–P(AD), and Hamric has made no allegations of fraud, malfeasance, or misrepresentation in the same.

█ The only adjustments made by the Service to the 1983 Form 1120 were adjustments to reflect the examination results for Unix for 1982 and 1983 pursuant to the Unix Settlement, i.e., to reflect Hamric's share of the 1983 Unix income, $86,518, and to reduce the carryover loss from 1982 to –0–. Hamric's share of Unix income in 1983 is a partnership item which became a nonpartnership item by way of the Unix Settlement. A settlement is applied to a partner by means of a computational adjustment, not under the ordinary deficiency and refund procedures. *Harris*, 99 T.C. at 126. There is no question that an adjustment made to Hamric's 1983 Form 1120 to reflect Hamric's share of Unix income in 1983 under the Unix Settlement should be made under the computational adjustment procedures.

█ When a partnership loss, deduction or credit allocated to a partner in one year carries over or back to other taxable years at the partner level, such carryover or carryback is an affected item. *Maxwell*, 87 T.C.

at 790–91; *Harris*, 99 T.C. at 125–26. Determining the amount of a loss carryover or carryback as a result of a settlement agreement relating to partnership items requires only a computational adjustment. *Harris*, 99 T.C. at 127. Under the Unix Settlement, Hamric's share of Unix losses in 1982 was $69,935. As explained in the United States' Motion to Dismiss and Brief, under the Unix Settlement there was no excess 1982 loss from Unix for Hamric to carry over to the 1983 Form 1120; consequently, the carryover loss was reduced to –0–. These adjustments do not require partner level determinations other than a computation. The Service did not purport to adjust any other item. As stated in the United States' Response, if the Service's computations were erroneous and had the effect of denying Hamric the benefit of some other deduction or loss supposedly reported within the "Unix, Ltd. 12,596" item, § 6230(c) provides procedures to challenge the adjustments made by the Service. But Hamric does not dispute the dollar amount of the adjustments made to the 1983 Form 1120 by the Service. *See* Parties' Stipulations No. 16; Ex. 17 & 18 thereto, Findings of Fact No. 34.

█ The adjustments made to reflect partnership income or loss under a settlement agreement or the impact of such settlement agreement on a carryover loss attributable to such partnership income or loss require no additional factual determinations at the partner level *other than a computation,* and Hamric has not argued otherwise. Hamric's only argument is that since the 1983 Form 1120 does not seem to properly reflect the numbers shown on the 1983 K–1:

> It *may* have been possible for Hamric to incur expenses or losses related to his investment in Unix outside of the partnership.... It is immaterial whether these events actually occurred, only that there was a possibility of such occurrence.

Hamric's Response at 5.

Hamric cites *Hambrose Leasing 1984–5 Ltd. Partnership v. Commissioner*, 99 T.C. 298, 1992 WL 210580 (1992) to support this contention. However, the substantive issue in *Hambrose Leasing* was whether the indi-

vidual partners were at risk within the meaning of 26 U.S.C. § 465. Based on the circumstances in *Hambrose Leasing*, the Tax Court concluded that the determination of amounts at risk with respect to partnership liabilities personally assumed by the individual partners was not a partnership item, but was an affected item that could only be dealt with in a proceeding involving the partners.

In *Hambrose Leasing*, the disputed item, the risk amount, required partner level determinations. Hamric's amount at risk is not a disputed issue in the case at bar. *See* Parties' Stipulations. No. 12; Findings of Fact, No. 17. In this case, the amount of Hamric's carryover loss from 1982 to 1983 under the Unix Settlement is readily determined by a simple computation. This issue is not dependent on other potential deductions incurred at the partner level.

■■■ Hamric asserts that it would be impossible for the Service to determine what income and deductions were contained in the net loss of $12,596 reported by Hamric in 1983 without factual determinations at the partner level. However, a partner is required to treat a partnership item in a manner that is consistent with the treatment of such item on the partnership return. 26 U.S.C. § 6222(a). If the partner does not treat a partnership item consistently with the partnership return, he is required to notify the Service of the inconsistent treatment. 256 U.S.C. § 6222(b). Hamric did not file a statement reporting any inconsistent treatment of Unix partnership items in 1983. United States' Motion to Dismiss ¶ 28; Lopez Declaration ¶ 18. Accordingly, when making its computations to reflect the Unix Settlement, the Service properly assumed that Hamric's 1983 Form 1120 reported the partnership items from Unix consistently with the 1983 Unix return. The United States contends that, given the 1982 and 1983 Unix Returns, the 1982 and 1983 Forms 1120, and the Unix Settlement, the Service could and did compute the adjustments necessary to reflect the Unix Settlement.

Hamric cannot undo the Unix Settlement by exploiting a mathematical error it made on the 1983 Form 1120. Hamric has not stated what "nonpartnership item" or "affect-

ed item requiring partner level determinations" was improperly adjusted by the Service. Hamric's letter requesting reconsideration of the claim for refund, Exhibit 18 to the Parties' Stipulations, states:

> When Mr. Alan Tinsley, attorney, worked out the terms of the settlement with Mr. Glenn Keenon, Appeals Officer for the Service; all information indicated that the statute of limitations for 1983 was closed at the partnership level. At that time, it was believed that the Service could not make assessments against an individual partner *based on 1982 partnership losses taken in 1983.*

Letter from Bob Hamric to Charles Peoples, Director of Austin Service Center, Internal Revenue Service, dated August 15, 1991, Exhibit 18 to Parties' Stipulations (emphasis added).

Notwithstanding Hamric's arguments relating to the source of the item reported as "Unix, Ltd. (76–0046117) (12,596)" on the 1983 Form 1120, Exhibit 18 clearly shows that Hamric was concerned about assessments based on 1982 partnership losses taken in 1983.

For all of the reasons stated above, the Service properly assessed the deficiency for the 1983 Form 1120 under the computational adjustment procedures.

3. *The additional tax liability for the 1983 Form 1120 was assessed before the statute of limitations expired.*

■■■ a. *General Statute of Limitations.* The statute of limitations for assessing tax attributable to partnership items and affected items is generally "three years after the later of—(1) the date on which the partnership return for such year was filed, or (2) the last day for filing such return for such year (determined without regard to extensions)." 26 U.S.C. § 6229(a). The 1982 Unix Return was filed on February 22, 1983. Therefore, under the general rule, the statute of limitations for assessment of partnership items and affected items for the 1982 Unix Return would have been April 15, 1986. *See* 26 U.S.C. §§ 6072(a), 6031. The 1983 Unix Return was filed on April 13, 1984. According-

ly, the statute of limitations for the assessment of partnership items and affected items for the 1983 Unix Return under the general rules would have been April 15, 1987.

■ b. *Extension of statute of Limitations for Assessment.* The statute of limitations for assessing partnership items and affected items (including an extension period) may be extended with respect to all partners by an agreement entered into by the Service and the tax matters partner before the expiration of the period for assessment. In *Maxwell,* the Tax Court concluded that a deficiency attributable to an affected item, such as a partner's carryback of a partnership's investment tax credit, is also a "deficiency attributable to a partnership item." *Maxwell,* 783 T.C. at 791 & n. 6.

Here, tax matters partner for Unix signed five Forms 872–P which were agreed to by the Service. The first form 872–P for 1982 (Ex. 7) was fully executed and effective on January 6, 1986, before the expiration of the general period of limitations for 1982 on April 15, 1986. It extended the time to assess tax until December 31, 1986. The second Form 872–P (Ex. 8) relating to both 1982 and 1983, was fully executed and effective September 29, 1986, extended the assessment date to June 30, 1988, before the expiration of the extended period of limitations for 1982 on December 31, 1986, and before the expiration of the general period of limitations for 1983 on April 15, 1987. The remaining three Forms 872–P (Exhibits 9, 10, 11) each related to 1982 and 1983, and each was fully executed and effective before the expiration of the prior extended periods of limitations for assessment. The collective effect of these five Forms 872–P was to extend the statute of limitations for assessment of partnership items and affected items for all partners until December 31, 1989, for both the 1982 Unix Return and the 1983 Unix Return. 26 U.S.C. § 6229(b)(1)(B). This statute of limitations was further extended by the fact of the Unix Settlement.

■ c. *Effect of Settlement Agreement on the Statute of Limitations.* Hamric entered into a settlement agreement on Form 870–P(AD) (Ex. 12) with the Service with respect to partnership adjustment for the 1982 and 1983 Unix Returns [the Unix Settlement]. The Form 870–P(AD) evidencing the Unix Settlement was signed on behalf of Hamric on March 24, 1989, and accepted on behalf of the Commissioner on August 2, 1989. As a result of the Unix Settlement, the partnership items of Unix were converted to nonpartnership items on August 2, 1989. 26 U.S.C. § 6231(b)(1)(C).[4]

If, before the expiration of the period otherwise provided in this section for assessing tax imposed by subtitle A with respect to partnership items of a partner for the partnership taxable year, such items become nonpartnership items by reason of 1 or more of the events described in subsection (b) of section 6231 [such as a settlement entered into by the Service with the partner], the period for assessing any tax imposed by subtitle A which is attributable to such items (or any item affected by such items) shall not expire *before the date which is 1 year after the date on which the items became nonpartnership items.* The period described in the preceding sentence (including any extension period under this sentence) may be extended with respect to any partner by agreement entered into by the Secretary and such partner.

26 U.S.C. §§ 6229(f) (emphasis added).

The service entered into the Unix Settlement with respect to 1982 and 1983 on August 2, 1989, before the statute of limitations expired for these years on December 31, 1989. Therefore, the statute of limitations for assessing additional tax attributable to partnership items or affected items against Hamric, as a result of the Unix Settlement, did not expire until August 2, 1990, one year after the date the settlement agreement was accepted on behalf of the Service.

d. *Hamric's Assessment for 1983 Form 1120.* The additional tax liability relating to the 1983 Form 1120 as a result of the adjustments made to properly reflect the Unix

---

4. "Partnership items of a partner for a partnership taxable year shall become nonpartnership items as of the date—(C) the Secretary enters into a settlement agreement with the partner with respect to such items." 26 U.S.C. § 6231(b)(1)(C).

Settlement and the 1983 Unix Return was assessed on July 23, 1990. Since the statute of limitations for assessing additional tax arising from the Unix Settlement did not expire until August 2, 1990, the assessment was timely.

Interest generally accrues on unpaid tax liabilities from the due date of the return until paid. 26 U.S.C. § 6601(a). "Interest prescribed under this section on any tax may be assessed and collected at any time during the period within which the tax to which such interest relates may be collected." 26 U.S.C. § 6601(g). The United States may collect an assessed tax for a 10-year period beginning on the date of assessment. 26 U.S.C. § 6502(a)(1). Therefore, interest on such tax assessment may be assessed and collected for a 10-year period beginning with the date that the tax was assessed. The tax deficiency for the 1983 Form 1120 was assessed on July 23, 1990. Accordingly, the interest on such deficiency which was assessed and collected during 1990 and 1991 was timely assessed and collected.

Finally, the Service assessed additions to the tax totaling $594.34 during 1991 for failure to pay the deficiency for the 1983 Form 1120 within ten (10) days of notice and demand for payment. This statutory addition to tax is imposed for each month or fraction of a month during which an assessed deficiency remains unpaid, and it accrues at a rate of 0.5% of the amount of such tax per month during which such failure continues, until the aggregate additional amount is 25%. 26 U.S.C. § 6651(a)(3). This addition to tax will be referred to as the failure to pay penalty. In *United States v. Krasnow*, 548 F.Supp. 686, 689–90 (S.D.N.Y.1982), the district court determined that additions to taxes imposed by § 6651(a)(3) could be collected without the requirement that such additions be separately assessed. Thus, the assessment and collection of the failure to pay penalty under 26 U.S.C. § 6651(a)(3) with respect to the 1983 Form 1120 was timely made.

## ORDER

IT IS THEREFORE ORDERED that the Plaintiff Bob Hamric Chevrolet, Inc.'s Motion for Summary Judgment filed on August 30, 1993 (# 24) is hereby DENIED, that the United States of America's Motion to Dismiss filed on August 30, 1993 (# 22) is hereby DENIED, but that the United States of America's Motion for Summary Judgment filed on August 30, 1993 (# 22) is hereby GRANTED such that the Internal Revenue Service properly assessed and collected the deficiency for the 1983 Form 1120, including $39,646 in taxes, $33,935.55 in interest, and a failure to pay penalty in the amount of $594.34, under the computational adjustment procedures.

## *JUDGMENT*

Before the Court is the Plaintiff Bob Hamric Chevrolet, Inc.'s Motion for Summary Judgment filed on August 30, 1993 (# 24), and the Defendant United States of America's Motion to Dismiss or for Summary Judgment filed on August 30, 1993 (# 22).

Based upon the reasoning set forth in the Memorandum Opinion and Order issued this same day, the Court finds that the Plaintiff Hamric's motion should be denied, that the Defendant United States' Motion to Dismiss should be denied, but that the Defendant United States' Motion for Summary Judgment should be granted. It is therefore

ORDERED that judgment is hereby entered in favor of Defendant United States of America, and that Plaintiff's claims against Defendant be in all things DENIED WITH PREJUDICE; it is further

ORDERED that costs of court are hereby awarded to the Defendant as allowed by Fed.R.Civ.P. 54(d), as amended December 1, 1993; it is further

ORDERED that all relief not granted herein is hereby DENIED.