DAVID L. WOODY, PETITIONER *v.* COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 15901-88, 17045-88.     Filed August 23, 1990.

*William H. Bradford, Jr.,* and *Gregory K. Oyler,* for the petitioner.

*Warren P. Simonsen,* for the respondent.

### OPINION

COHEN, *Judge:* These cases are before us on respondent's motions to dismiss for lack of jurisdiction and to strike, directed at certain issues raised in the petitions. Respondent contends that we lack jurisdiction of those issues because of prior partnership proceedings conducted and settled administratively under sections 6221-6231, added by the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324 (TEFRA provisions). Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years in issue.

Petitioner was a resident of Maryland when he filed his petitions. From 1982 through 1984, David L. Woody (petitioner) and Hilltop Improvement Corp. (Hilltop Improvement) were the general partners in Hilltop Associates Limited Partnership (Hilltop). Petitioner and Southern Manor Improvement Corp. (Southern Manor Improvement) were the general partners in Southern Manor Associates (Southern Manor). Petitioner was also a limited partner in Hilltop and in Southern Manor. Petitioner became tax matters partner of Hilltop and of Southern Manor and elected application of the Internal Revenue Code partnership audit and litigation provisions to each partnership's 1982 returns.

On November 21, 1981, petitioner, Hilltop Improvement, and certain other limited partners of Hilltop entered into an agreement. A similar agreement was executed by petitioner, Southern Manor Improvement, and certain limited partners of Southern Manor. Under the agreements, the general partners of each partnership were to be paid fees (guaranteed payments) for performing certain partnership management tasks. The limited partners of each partnership agreed to provide assistance to the general partners in the management of the partnership, and the general partners agreed to pay a specified percentage of their guaranteed payments to the limited partners.

In accordance with the November 21, 1981, agreements, petitioner caused payments to be made to the general partners and to those limited partners who were parties to the agreements, either in cash or through credits to their respective Hilltop or Southern Manor partnership capital accounts.

In 1986, the Internal Revenue Service conducted audits of Hilltop and Southern Manor. On January 5, 1987, a Form 886-A was sent to petitioner explaining proposed adjustments to the tax liability of Southern Manor. That form provided the following explanation of the allocation of the guaranteed payments to petitioner: "David Woody as general partner must pick up the fee of $50,000, accrued by the partnership, at each of 1982, 1983 and 1984." On January 5, 1987, petitioner also received a Form 886-A for Hilltop. There was no explanation of the allocation of the guaranteed payments to petitioner. On March 23, 1987, a Notice of Final Partnership Administrative Adjustment (FPAA) for Southern Manor was mailed to petitioner. On April 6, 1987, an FPAA for Hilltop was mailed to petitioner.

Each FPAA advised petitioner of his right to contest the proposed adjustments in the Tax Court, the Claims Court, or a District Court within 90 days. Sec. 6226. Forms 870-P, Settlement Agreement for Partnership Adjustments, were enclosed with each FPAA and specifically stated:

If this offer is accepted for the Commissioner, the treatment of partnership items under this agreement will not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact; and no claim for refund or credit based on any change in the treatment of partnership items may be filed or prosecuted.

On July 22, 1987, petitioner, as tax matters partner, executed a Form 870-P with respect to 1982, 1983, and 1984 for Southern Manor. Both the FPAA and the Form 870-P for Southern Manor included a Schedule of Adjustments setting out specific items of income and expense resulting in "Total Adjustments to Ordinary Income" for each year. The schedule separately set out "Tax Preference Items" and "Guaranteed Fee to General Partner" for each year. The guaranteed fee was set out as $50,000 for each year, but the Form 870-P did not identify the general partner to

whom the fee was paid. On August 7, 1987, the Form 870-P was accepted for the Commissioner.

On July 22, 1987, petitioner, as tax matters partner, and respondent also executed a Form 870-P with respect to 1982, 1983, and 1984 for Hilltop. Both the FPAA and the Form 870-P for Hilltop included a Schedule of Adjustments setting out specific items of income and expense resulting in "Total Adjustments to Ordinary Income" for each year. The schedule separately set out "Tax Preference Items" and "Guaranteed Fee to General Partner" for each year. The guaranteed fee was set out as $87,500 for each year, but the Form 870-P did not identify the general partner to whom the fee was paid. On August 3, 1987, the Form 870-P was accepted for the Commissioner.

On February 16, January 27, and January 28, 1988, Forms 1902-C, Report of Individual Income Tax Examination Changes, were sent to petitioner for 1982, 1983, and 1984, respectively. These reports stated that the "adjustments are based on the examination of a flow-through entity" and reflected adjustments of partnership income from Southern Manor and Hilltop. In addition to petitioner's share of the adjustments to ordinary income, each report showed "wages" to petitioner of $50,000 from Southern Manor and $87,500 from Hilltop for each year.

Respondent allocated the full amount of the guaranteed payments for both partnerships to petitioner without any adjustment for the following amounts petitioner had reported on his returns for the years in issue:

| Year | Hilltop partnership | Southern Manor partnership |
|------|---------------------|----------------------------|
| 1982 | $8,000 | $14,080 |
| 1983 | 24,550 | 18,580 |
| 1984 | 16,441 | 15,800 |

Of the guaranteed payments paid under the agreements between the general and limited partners of Hilltop and Southern Manor, the following amounts were reported as income by the recipients:

| | 1982 | | 1983 | | 1984 | |
|---|---|---|---|---|---|---|
| | Manor | Hilltop | Manor | Hilltop | Manor | Hilltop |
| SMI Corp. | $440 | - - - | $560 | - - - | $36,800 | - - - |
| S. McCrea | - - - | - - - | - - - | - - - | - - - | - - - |
| E. Woody | 13,640 | $24,000 | 13,020 | $18,500 | - - - | $5,000 |

|  | 1982 | | 1983 | | 1984 | |
|---|---|---|---|---|---|---|
|  | Manor | Hilltop | Manor | Hilltop | Manor | Hilltop |
| G. Goldstein | - - - | - - - | 13,020 | - - - | - - - | - - - |
| A. Meinhardt | 13,600 | - - - | - - - | - - - | - - - | - - - |
| HI Corp. | - - - | 2,000 | - - - | 16,925 | - - - | 49,575 |
| Total | 27,680 | 26,000 | 26,600 | 35,425 | 36,800 | 54,575 |

Respondent sent to petitioner notices of deficiency for (1) 1982 on April 1, 1988; (2) 1983 on April 5, 1988; and (3) 1984 on April 8, 1988. The notices of deficiency collectively determined that petitioner is liable for the following amounts:

|  |  | Additions to tax |
|---|---|---|
| Year | Deficiency | Sec. 6661 |
| 1982 | - - - | $18,898.25 |
| 1983 | - - - | 7,621.25 |
| 1984 | - - - | 19,483.50 |

On June 29, 1988, and July 7, 1988, after receiving the notices of deficiency for 1982 through 1984, petitioner made the following payments by check to respondent:

|  |  | Additions to tax |
|---|---|---|
| Year | Income tax | Sec. 6661 |
| 1982 | $16,158 | $4,102 |
| 1983 | 13,384 | 3,409 |
| 1984 | 4,950 | - - - |

On June 29, 1988, petitioner filed a petition responding to the notices of deficiency for 1982 and 1983. On July 7, 1988, petitioner filed a petition responding to the notice of deficiency for 1984. In both petitions, petitioner alleged that he was entitled to a refund of overpayment and overassessment of tax under section 6512(b) for each of the years in issue. In an amended petition filed with leave of the Court over respondent's objections, petitioner claims a deduction for amounts caused to be paid or credited to other partners of each partnership as compensation for assistance, or reimbursement for expenses incurred, in activities in connection with managing the respective partnerships.

Shortly prior to trial, respondent filed in each case a motion to dismiss for lack of jurisdiction and to strike that portion of the amended petition that relates to redetermining the deficiencies attributable to partnership item. Respondent's motions are the subject of this opinion.

Respondent argues that, as a partnership item, the guaranteed payment issue must be resolved separately from petitioner's personal cases. Respondent contends that petitioner's proper recourse was to petition for readjustment under section 6226(f) when he received the FPAA. Because the time for filing for such a petition has passed, respondent asserts that petitioner may only seek relief pursuant to section 6230(c) in a District Court or the Claims Court. Cf. sec. 7422(h).

Petitioner argues that the guaranteed payments in these cases are not "partnership items." Petitioner acknowledges that the settlement agreements executed on behalf of the partnerships determined the *timing* of deduction of the guaranteed payments by the partnership and receipt by the payees. Petitioner asserts, however, that there was nothing in those agreements with respect to the *allocation* of the guaranteed payments and that petitioner did not agree that the payments should be allocated to him in total. Further, petitioner argues that respondent failed to take into account the amounts of the guaranteed payments petitioner and others previously reported as income for the years in issue. Petitioner also argues that the Court has jurisdiction to hear petitioner's claim that he is entitled to a deduction for amounts he caused to be paid or credited to other limited partners, because those deductions are not partnership items. We must consider, therefore, (1) whether the guaranteed payments are necessarily partnership items, (2) the foundation of our jurisdiction in these cases, and (3) how our refund jurisdiction relates to these cases.

## 1. *Partnership and Nonpartnership Items*

The tax treatment of a partnership item is generally determined at the partnership level. Sec. 6221. Section 6231(a)(3) defines a "partnership item" as follows:

(3) PARTNERSHIP ITEM.—The term "partnership item" means, with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.

Section 301.6231(a)(3)-1, Proced. & Admin. Regs., provides:

(a) *In general.* For purposes of subtitle F of the Internal Revenue Code of 1954, the following items which are required to be taken into account for the taxable year of a partnership under subtitle A of the Code are more appropriately determined at the partnership level than at the partner level and, therefore, are partnership items:

(1) The partnership aggregate and each partner's share of each of the following:

(i) Items of income, gain, loss, deduction, or credit of the partnership;

(ii) Expenditures by the partnership not deductible in computing its taxable income (for example, charitable contributions);

(iii) Items of the partnership which may be tax preference items under section 57(a) for any partner;

(iv) Income of the partnership exempt from tax;

(v) Partnership liabilities (including determinations with respect to the amount of the liabilities, whether the liabilities are nonrecourse, and changes from the preceding taxable year); and

(vi) Other amounts determinable at the partnership level with respect to partnership assets, investments, transactions and operations necessary to enable the partnership or the partners to determine—

(A) The investment credit determined under section 46(a);

(B) Recapture under section 47 of the investment credit;

(C) Amounts at risk in any activity to which section 465 applies;

(D) The depletion allowance under section 613A with respect to oil and gas wells; and

(E) The application of section 751(a) and (b);

(2) Guaranteed Payments;

\* \* \* \* \* \* \*

(4) Items relating to the following transactions, to the extent that a determination of such items can be made from determinations that the partnership is required to make with respect to an amount, the character of an amount, or the percentage interest of a partner in the partnership, for purposes of the partnership books and records or for purposes of furnishing information to a partner;

(i) Contributions to the partnership;

(ii) Distributions from the partnership; and

(iii) Transactions to which section 707(a) applies (including the application of section 707(b)).

## Section 707(c) provides:

(c) GUARANTEED PAYMENTS.—To the extent determined without regard to the income of the partnership, payments to a partner for services or the use of capital shall be considered as made to one who is not a member of the partnership, but only for the purposes of section 61(a) (relating to gross income) and, subject to section 263, for purposes of section 162(a) (relating to trade or business expenses).

Section 707(c), section 1.707-1(c), Income Tax Regs., sets out rules for the deductibility of guaranteed payments to a partnership and states that, for purposes other than those identified, "guaranteed payments are regarded as a partner's distributive share of ordinary income."

Guaranteed payments have two aspects. First, they are deductible to the partnership in computing distributable partnership income. In this sense they are necessarily considered as items of deduction that are partnership items under section 301.6231(a)(3)-1(a)(1)(i), Proced. & Admin. Regs., above. Second, under section 707(c) and section 1.707-1(c), Income Tax Regs., they are regarded as part of the partner's reportable share of partnership income, even though they are determined without regard to a percentage interest in profits or losses. In this sense they are necessarily considered as distributions from the partnership that are partnership items under section 301.6231(a)(3)-1(a)(4)(ii), Proced. & Admin. Regs., above. Thus in two ways (determination and allocation) guaranteed payments are inseparable from other partnership items set forth in section 306.6231(a)(3)-1(a), Proced. & Admin. Regs., even if guaranteed payments were not expressly listed there as partnership items. The allocation of the guaranteed payments among the partners in the partnership was thus as much to be determined in the partnership proceeding as was the ordinary income of the partnership to be distributed to the partners in accordance with their percentage interests in profits and losses.

Petitioner notes that he was one of two general partners in each of the two partnerships, Hilltop and Southern Manor. He argues that nothing in the FPAA's sent to the partnerships or in the settlement agreements that he executed indicated that the Internal Revenue Service was proposing to allocate the entire guaranteed fee adjustments for both partnerships for all years to petitioner or that the resulting assessment against petitioner would not make any allowance for portions of those fees already reported by petitioner and by other partners.

Respondent does not explain why all of the guaranteed payments were allocated to petitioner, and he has now stipulated that petitioner and other persons had previously

reported at least some of the guaranteed payments on their returns for the years in issue, as set forth above. Respondent argues that petitioner could have, should have, and was exclusively required to contest the allocation of guaranteed payments in the partnership proceedings. The time for filing contests of the FPAA's sent in March and April 1987 has long passed, and respondent asserts that he cannot now make adjustments to individual income of other persons who may have received but not reported a portion of the payments.

Petitioner executed Forms 870-P within a few months of receipt of the FPAA's for each partnership, and the schedules attached to the Forms 870-P were identical to the schedules attached to the FPAA's. Thus it appears that the allocation of guaranteed payments was not in fact negotiated or fully discussed during the partnership proceeding. Failure to specifically negotiate an actual determination of the allocation is not material, however. The critical factor is whether the determination was required to be made in the partnership proceeding. Cf. *Dial USA, Inc. v. Commissioner,* 95 T.C. 1 (1990).

Under the TEFRA provisions, the guaranteed payments are partnership items that were required to be determined in the partnership proceedings. We thus have no jurisdiction in these cases over petitioner's claim that the guaranteed payments were not correctly allocated. Jurisdiction over petitioner's other claims, if it exists, must be based on some alternative basis applicable to the facts of these cases.

## 2. *Jurisdiction Over Affected Items*

Respondent sent notices of deficiency to petitioner determining only additions to tax arising out of the partnership items determined in the partnership proceedings. There is no dispute that we have jurisdiction over petitioner's challenge of the additions to tax, because those additions to tax are affected items described in section 6230(a)(2)(A)(i).

An affected item is "any item to the extent such item is affected by a partnership item." Sec. 6231(a)(5). There are two types of affected items. The first type of affected item requires only a computational adjustment at the partner level, which can only be made at the conclusion of the

partnership level proceeding. *N.C.F. Energy Partners v. Commissioner,* 89 T.C. 741, 744 (1987). Section 301.6231(a)(6)-1T, Proced. & Admin. Regs., provides:

A computational adjustment may include a change in tax liability that reflects a change in an affected item where that change is necessary to properly reflect the treatment of a partnership item. * * *

For this type of affected item, respondent is not required to send a notice of deficiency to the individual partner because the deficiency determination is merely computational. *Maxwell v. Commissioner,* 87 T.C. 783, 792 n. 7 (1986).

The other type of affected item is one that is dependent upon factual determinations (other than a computation) relating to an adjustment made at the partner level. In circumstances involving that latter type of affected item, respondent normally issues a notice of deficiency to the individual partner for the affected item after the partnership proceeding is complete. Sec. 6230(a)(2). Our factual determination in such cases may include determining the correctness of the addition to tax with reference to the entire understatement. Sec. 301.6231(a)(5)-1T(d), Proced. & Admin. Regs.; *Saso v. Commissioner,* 93 T.C. 730 (1989).

Section 6661 additions to tax attributable to partnership adjustments are among the affected items for which a factual determination at the partner level is required. *N.C.F. Energy Partners v. Commissioner,* 89 T.C. at 744-745. Respondent issued notices of deficiency to petitioner for section 6661 additions to tax at the conclusion of the partnership proceedings. Consequently, we have jurisdiction to review the correctness of those amounts. *N.C.F. Energy Partners v. Commissioner,* 89 T.C. at 745.

The disposition of respondent's motions to dismiss depends, in part, on whether the adjustments in dispute other than the additions to tax may be characterized as affected items. Petitioner contends that respondent made a computational error in applying the partnership adjustments and not allowing credit for amounts previously reported by petitioner. This adjustment is the first type of affected item, i.e., a computational adjustment, for which respondent was not required to send a notice of deficiency.

Petitioner contends that the Court has jurisdiction to hear his refund claim on the basis that he is entitled to a deduction for amounts he caused to be paid or credited to other partners because these deductions are not partnership items. Petitioner relies on *Klein v. Commissioner*, 25 T.C. 1045 (1956), and *Dotson v. Commissioner*, a Memorandum Opinion of this Court dated August 6, 1953. Presumably these deductions for payments to others were not claimed on petitioner's return as filed, because he did not report the full amount of guaranteed payments ultimately allocated to him. We conclude that petitioner's claim for offsetting deductions from his distributable share of partnership income is the second type of affected item, because it requires factual determinations at the partner level.

Respondent contends that petitioner's remedy with respect to the claimed overpayments is to file a claim for refund and then bring suit in the Claims Court or a District Court if the claim for refund is denied.

If there were no proceeding pending with respect to the additions to tax, petitioner could not claim the overpayment in this Court. We must consider whether the pendency of a valid proceeding to contest the additions to tax invokes our jurisdiction, under section 6512(b), to determine an overpayment resulting from an item over which we otherwise would have no jurisdiction.

3. *Jurisdiction to Determine Overpayments*

Section 6512(a) provides the general rule that, if a taxpayer files a timely petition with this Court with respect to a notice of deficiency, the taxpayer may not file another suit for a credit or refund of income tax for the same year. Among the exceptions to the general rule are "overpayments attributable to partnership items, in accordance with subchapter C of chapter 63 [the partnership provisions of sections 6221-6233]." Sec. 6512(a)(4). Thus section 6512(a) recognizes the necessity for separate proceedings arising out of partnership items and nonpartnership items. See *Maxwell v. Commissioner, supra; Munro v. Commissioner*, 92 T.C. 71, 74 (1989). If petitioner had previously maintained a proceeding in this Court with respect to nonpartnership items, he would not be precluded from bringing the present proceed-

ings with respect to the additions to tax under section 6661. Similarly, he is not precluded from bringing a separate refund action because of a prior proceeding for the same taxable year involving other items. The dispute in this instance, however, is whether he may combine his claim for refund of an overpayment with his petitions from the notices of deficiency relating to the additions to tax under section 6661.

Section 6512(b)(1) provides our general jurisdiction to determine overpayments as follows:

(b) OVERPAYMENT DETERMINED BY TAX COURT.—

(1) JURISDICTION TO DETERMINE.—Except as provided by paragraph (3) and by section 7463, if the Tax Court finds that there is no deficiency and further finds that the taxpayer has made an overpayment of income tax for the same taxable year, of gift tax for the same calendar year or calendar quarter, of estate tax in respect of the taxable estate of the same decedent, or of tax imposed by chapter 41, 42, 43, or 44 with respect to any act (or failure to act) to which such petition relates for the same taxable period, in respect of which the Secretary determined the deficiency, or finds that there is a deficiency but that the taxpayer has made an overpayment of such tax, the Tax Court shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Tax Court has become final, be credited or refunded to the taxpayer.

Section 6512(b)(2) provides jurisdiction to order refunds of overpayments determined by the Tax Court.

Respondent argues that the statute of limitations bars claims of additional deductions resulting in an overpayment of tax for nonpartnership items, such as deductions against partnership income. The bar of the statute of limitations is not normally a jurisdictional issue. *Saso v. Commissioner,* 93 T.C. at 734. Our jurisdiction to determine overpayments, however, is established by a statute conditioning such relief on timeliness. Section 6512(b)(3) limits our jurisdiction to determine credits or refunds by coordinating provisions dealing with the timeliness of such claims as follows:

(3) LIMIT ON AMOUNT OF CREDIT OR REFUND.—No such credit or refund shall be allowed or made of any portion of the tax unless the Tax Court determines as part of its decision that such portion was paid—

(A) after the mailing of the notice of deficiency,

(B) within the period which would be applicable under section 6511(b)(2), (c), or (d), if on the date of the mailing of the notice of deficiency a claim had been filed (whether or not filed) stating the

grounds upon which the Tax Court finds that there is an overpayment, or

(C) within the period which would be applicable under section 6511(b)(2), (c), or (d), in respect of any claim for refund filed within the applicable period specified in section 6511 and before the date of the mailing of the notice of deficiency—

(i) which had not been disallowed before that date,

(ii) which had been disallowed before that date and in respect of which a timely suit for refund could have been commenced as of that date, or

(iii) in respect of which a suit for refund had been commenced before that date and within the period specified in section 6532.

Under section 6512(b)(3), an overpayment in the usual deficiency case may be determined by the Tax Court without the separate filing of a claim for refund. If that same rule applies in these cases, the claims asserted in the petitions and amended petitions are timely, and we have jurisdiction over them.

Respondent contends that section 6512(b) does not apply here because of section 6511(g), which provides:

(g) SPECIAL RULE FOR CLAIMS WITH RESPECT TO PARTNERSHIP ITEMS.—In the case of any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (as defined in section 6231(a)(3)), the provisions of section 6227 and subsections (c) and (d) of section 6230 shall apply in lieu of the provisions of this subchapter.

Section 6511(g) is a part of subchapter B (of chapter 66A), dealing generally with limitations on credit or refund. The apparent purpose of section 6511(g) is to extend the period of limitations on claims arising out of partnership proceedings beyond the time limits otherwise applicable because claims arising out of partnership proceedings must await conclusion of those proceedings. There is no indication that section 6511(g) was intended to override the jurisdictional provisions of section 6512(b)(1) or (2) or other parts of subchapter B, which set forth the general deficiency procedures over which this Court has jurisdiction.

Respondent contends that a claim for refund can only be made by filing with the Service Center with which the partner's return is filed. Sec. 301.6230(c)-1T, Proced. & Admin. Regs. Respondent argues, in effect, that section 6230 and regulations, together with provisions for suit in a District Court or the Claims Court, provide the exclusive

means by which a partner may contest a computational adjustment. Respondent asserts:

As for petitioner's claim that this Court has overpayment jurisdiction, the Code provides a special rule for refund claims with respect to partnership items. Proceedings for the refund of tax overpayments arising out of a partner's distributive share of items of income, losses, deductions, and credits must be conducted at the partnership level rather than at the partner's level. Section 6511(g) provides that in the case of any income tax with respect to any person which is attributable to any partnership item, the provisions of section 6227 and subsections (c) and (d) of section 6230 shall apply *in lieu of* the provisions of this subchapter (including section 6512(b)). Furthermore, section 7422(h) prohibits suits for refund attributable to partnership items except as provided in section 6228(b) or section 6230(c). Therefore, since the allocation of guaranteed payments is a partnership item, this Court does not have jurisdiction pursuant to section 6512(b) to determine an overpayment in this case; instead, petitioner must look to sections 6227, 6228 and 6230 in pursuing his claim for an overpayment.

We agree with respondent to the extent that the issue is phrased as "allocation of guaranteed payments." We have decided, however, that the claimed overpayment is attributable to affected items.

Section 6230 sets out administrative provisions relating to TEFRA proceedings. Section 6230(a) provides in pertinent part:

SEC. 6230. ADDITIONAL ADMINISTRATIVE PROVISIONS.
    (a) COORDINATION WITH DEFICIENCY PROCEEDINGS.—
        (1) IN GENERAL.—Except as provided in paragraph (2), subchapter B of this chapter shall not apply to the assessment or collection of any computational adjustment.
        (2) DEFICIENCY PROCEEDINGS TO APPLY IN CERTAIN CASES.—
            (A) Subchapter B shall apply to any deficiency attributable to—
                (i) affected items which require partner level determinations * * *

Section 6230(c) sets out rules for claims for refund by a partner arising out of erroneous computations. A partner may file a claim for refund on the ground that a computation erroneously failed to make the partnership items on the partner's return consistent with the treatment of the partnership items on the partnership return or to apply to the partner a settlement, a final partnership administrative adjustment, or the decision of a court in an action brought under section 6226 or 6228(a) within 6 months after the day

on which the Secretary mails the notice of computational adjustment to the partner. Sec. 6230(c)(1)(A) and (2)(A). Claims based on failure to allow a credit or refund to the partner in the amount of the overpayment attributable to the application to the partner of a settlement, a final partnership administrative adjustment, or the decision of a court in an action brought under section 6226 or 6228(a) must be brought within 2 years after the day on which the applicable event occurred. Sec. 6230(c)(1)(B) and (2)(B). If the claim so filed by a partner is not allowed, the partner may bring suit within the period specified in subsection (a) of section 6532 (relating to periods of limitations on refund suits). Sec. 6230(c)(3). Section 6230(c)(4) provides:

(4) No REVIEW OF SUBSTANTIVE ISSUES.—For purposes of any claim or suit under this subsection, the treatment of partnership items on the partnership return, under the settlement, under the final partnership administrative adjustment, or under the decision of the court (whichever is appropriate) shall be conclusive.

Section 6230(d) provides additional special rules with respect to credits or refunds attributable to partnership items. Section 6230(d)(1) sets forth the general rule that no credit or refund of an overpayment attributable to a partnership item (or an affected item) shall be allowed or made to any partner after the expiration of the period of limitation prescribed in section 6229 with respect to such partner for assessment of any tax attributable to such item. Section 6230(d)(3) incorporates the provisions of section 6532 for bringing suit with respect to the claim.

Section 6230(d)(5) provides that:

(d) SPECIAL RULES WITH RESPECT TO CREDITS OR REFUNDS ATTRIBUTABLE TO PARTNERSHIP ITEMS.—

\*     \*     \*     \*     \*     \*     \*

(5) OVERPAYMENTS REFUNDED WITHOUT REQUIREMENT THAT PARTNER FILE CLAIM.—In the case of any overpayment by a partner which is attributable to a partnership item (or an affected item) and which may be refunded under this subchapter, to the extent practicable credit or refund of such overpayment shall be allowed or made without any requirement that the partner file a claim therefor.

Under the above sections, if either of petitioner's petitions or either of his amended petitions is treated as a claim for refund, it asserts appropriate grounds and is timely.

4. *Summary and Conclusion*

Respondent suggests that the deductions claimed by petitioner in these cases are really the same as an attempt to reallocate the guaranteed payments determined at the partnership level or to circumvent the TEFRA provisions. This argument, however, is comparable to claiming the bar of collateral estoppel. It does not affect jurisdiction.

Respondent argues that the TEFRA provisions were enacted to provide a uniform proceeding to litigate all partnership matters and that, since the guaranteed payments were settled at the partnership level, there should be no more piecemeal litigation.

The irony in these cases is that respondent, while urging that TEFRA was intended to prevent piecemeal litigation, would require petitioner to maintain two separate proceedings after the partnership proceeding was completed. We would be required to determine separately petitioner's liability for additions to tax under section 6661, which ultimately depends on the correct determination of any underpayments attributable to petitioner's receipt of partnership income. The Claims Court or a District Court would be asked to determine that an overpayment has been made.

Congress enacted the TEFRA provisions to provide a unified treatment—vis-á-vis all partners in a partnership—of all items of partnership income, loss, deductions, and credits. See *Maxwell v. Commissioner,* 87 T.C. at 787. A partnership proceeding is designed to resolve disputes regarding partnership items. *N.C.F. Energy Partners v. Commissioner,* 89 T.C. at 746. Resolution of the tax consequences of affected items, however, may—as it does here—require additional factual determinations at the individual partner level. Challenges to readjustments of affected items are not precluded by the finality of a partnership proceeding, although relitigation of distributable partnership income is barred. Compare *Saso v. Commissioner,* 93 T.C. 730, 733-734 (1989).

Where a statutory notice is required and is sent and a partner files a petition in this Court—as was done here with respect to the additions to tax under section 6661—there is no reason to preclude our consideration of the individual aspects of petitioner's tax liability resulting from the

computational adjustments or to require the partner to seek separate relief in another court. We have found no statutory provision creating this burden on the partner by negating the applicability of our overpayment jurisdiction under section 6512(b).

We do not have jurisdiction in petitioner's case over allocation of guaranteed payments by the partnerships. Because he filed a petition from notices of deficiency determining additions to tax attributable to partnership items, however, we have jurisdiction to determine overpayments resulting from other affected items attributable to the partnership adjustments.

> *An order denying respondent's motions will be issued.*