T.C. Memo. 2001-183

UNITED STATES TAX COURT

ANTHONY B. AND JILL SERFUSTINI, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14383-99.                    Filed July 23, 2001.

Anthony B. Serfustini, pro se.

<u>Timothy S. Sinnott</u>, for respondent.

MEMORANDUM OPINION

COUVILLION, <u>Special Trial Judge</u>:  In separate notices of
deficiency, respondent determined that petitioners were liable
for the following additions to tax for the years 1982 and 1983:[1]

---

[1]    Unless otherwise indicated, all section references are
to the Internal Revenue Code in effect for the years at issue,
and all Rule references are to the Tax Court Rules of Practice
and Procedure.

| | Additions to Tax | | |
|------|-----------------|-----------------|-----------|
| Year | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6661 |
| 1982 | $450 | * | $2,617 |
| 1983 | 25 | ** | --- |

      *     50 percent of the interest due on $10,467.
    **   50 percent of the interest due on $503.

The issues for decision are: (1) Whether, for 1982 and 1983, petitioners are liable for the additions to tax under section 6653(a)(1) and (2) for negligence, and (2) whether, for 1982, petitioners are liable for the addition to tax under section 6661 for a substantial understatement of tax. The issues in this case relate to the participation of Anthony B. Serfustini (petitioner) as a limited partner in a partnership known as Blythe Jojoba II Research, Ltd. (Blythe II or the partnership).[2]

---

[2] Petitioners have attempted to place at issue in this case the underlying deficiencies attributable to partnership losses they claimed during the years at issue. As described hereafter, the deficiencies determined by respondent in connection with Blythe II are partnership-level adjustments, sec. 6231(a)(3), that were upheld by this Court in the case of Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6. This Court has repeatedly held that it lacks jurisdiction, in a partner-level proceeding involving nonpartnership items (which is the case herein), to redetermine a deficiency, or any portion thereof, attributable to the tax treatment of a partnership item. E.g., Saso v. Commissioner, 93 T.C. 730, 734 (1989); Maxwell v. Commissioner, 87 T.C. 783, 788 (1986); see also Powell v. Commissioner, 96 T.C. 707, 712 (1991); Woody v. Commissioner, 95 T.C. 193, 208 (1990); Palmer v. Commissioner, T.C. Memo. 1992-352, affd. 4 F.3d 1000 (11th Cir. 1993); English v. Commissioner, T.C. Memo. 1990-662.

Petitioners also contend that the issuance of the notices of deficiency in this case was barred by the statute of limitations

(continued...)

Some of the facts were stipulated, and those facts, with the annexed exhibits, are so found and are incorporated herein by reference. At the time the petition was filed, petitioners' legal residence was Henderson, Nevada.

---

[2](...continued)
on assessment, and that respondent failed to notify them timely of the partnership-level proceeding. Generally, the Commissioner is required to assess a tax within 3 years after the taxpayer's return is filed. Sec. 6501(a). In the case of a tax attributable to partnership items, however, sec. 6229 sets forth special rules to extend the period of limitations prescribed by sec. 6501. Sec. 6501(o). Sec. 6229(a) provides that the period for assessing income tax attributable to a partnership item (or affected item, which includes the additions to tax determined by respondent in the instant case, sec. 301.6231(a)(5)-1T(d), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6790 (Mar. 5, 1987)) for a partnership taxable year shall not expire before 3 years after the later of (1) the date the partnership return for such year was filed or (2) the last day for filing such return for such year (without regard to extensions). Sec. 6229(d) provides that the mailing of a notice of final partnership administrative adjustment suspends the running of the 3-year limitations period for the period during which an action may be brought under sec. 6226 (and, if an action is brought, until the decision of the court has become final) and for 1 year thereafter.
The record in this case reflects, and the Court so finds, that a notice of final partnership administrative adjustment for Blythe II, for each year at issue, was mailed to the tax matters partner of Blythe II on Feb. 16, 1989, and that copies of the same were mailed to petitioners' last known address on Mar. 8, 1989. The stipulation of facts includes a copy of the decision entered regarding Blythe II, which is dated July 1, 1998. Under sec. 6229(d)(2), the running of the 3-year period of limitations for assessing a deficiency attributable to a 1982 or 1983 partnership item was suspended for 1 year after the date the decision entered on July 1, 1998, became final. The decision became final no earlier than Sept. 29, 1998 (90 days after it was entered). Secs. 7481(a)(1), 7483. The notices of deficiency in this proceeding were issued to petitioners on May 28, 1999; consequently, the notices of deficiency relating to the affected items (the additions to tax) were issued timely.

Petitioner is an orthopedic surgeon who has practiced in the Las Vegas, Nevada, area since 1974. Through a physician friend with whom petitioner had been a medical resident in Salt Lake City, Utah, petitioner became acquainted with a financial adviser named Gary Sheets (Mr. Sheets). During 1982, Mr. Sheets approached petitioner about investing in Blythe II, which was being promoted as an agricultural research and development partnership. Mr. Sheets provided petitioner with a fairly voluminous private placement memorandum[3] (the offering), which described the proposed investment in and the activities to be conducted through Blythe II. Petitioner admittedly did not read the document. Instead, petitioner passed along the offering to his accountant, Jack Meyers (Mr. Meyers), who routinely prepared petitioners' Federal income tax returns. After perusing the offering, Mr. Meyers advised petitioner that the Blythe II investment did not appear to be any type of scam.

Petitioner also visited the women's cosmetics aisle in a local supermarket where he confirmed, as the Court understands his testimony, that a few women's cosmetic products did contain some derivative of the jojoba plant. According to the offering, some hair oils, shampoos, and soap already contained a derivative of the jojoba plant, and one of the potential new uses for an oil

---

[3] The private placement memorandum consisted of some 47 pages, plus 8 exhibits, and a table of contents.

derivative of the plant was an ingredient in face creams and sunscreens. Petitioner did not consult an attorney or any independent expert in agriculture or jojoba plants regarding whether jojoba oil or any other jojoba derivative had a potentially lucrative commercial market. Petitioners, nevertheless, invested in Blythe II.

On their joint 1982 Federal income tax return, petitioners reported wages of $258,000 from petitioner's medical practice, interest income of $1,605.91, taxable dividend income of $2,550, and capital gains of $4,694.62. Petitioners reported total net losses from two separate partnerships of $52,464 for 1982, of which $20,933 was the loss from Blythe II.[4] Thus, petitioners reported total income of $214,386.53 and a total tax liability of $69,854.69.[5]

On their joint 1983 Federal income tax return, petitioners reported wages of $233,018.11 from petitioner's medical practice, interest income of $3,479.22, taxable dividend income of $136.89, and capital gains of $14,139.84. Petitioners reported total net

---

[4] The other $31,531 partnership loss was in connection with Arrowhead Village, a real estate partnership promoted by Mr. Sheets.

[5] During April 1986, petitioners filed an amended return for 1982 reporting a decrease in adjusted gross income of $2,921 due to an additional $2,921 loss in connection with the aforementioned Arrowhead Village partnership. On the amended return, petitioners reported a total tax liability of $68,394.19.

losses from two partnerships and two rental properties totaling $57,513, of which $1,006 represented the loss from Blythe II.[6] Thus, petitioners reported an adjusted gross income of $193,261.06 and a total tax liability of $53,187.27.

Blythe II was audited by the Internal Revenue Service, and a notice of final partnership administrative adjustment was issued to the partnership.  The partnership initiated a TEFRA proceeding in this Court, and a decision was entered in Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6, which involved a similar jojoba investment program.[7]  In the decided case, this Court held that the partnerships[8] did not directly or indirectly engage in research or experimentation and that the partnerships lacked a realistic prospect of entering into a trade or business. In upholding respondent's disallowance of research and experimental expenditures, the Court found that the agreements between the partnerships and the proposed research and development contractor, U.S. Agri Research & Development Corp.

---

[6]    The remainder of the loss consisted of $50,582 from Arrowhead Village partnership, $49.57 from the rental of a condominium, and $5,875.60 from the rental of a Mercedes automobile.

[7]    The tax matters partner of Blythe II signed a stipulation to be bound by the outcome of Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6.

[8]    Eighteen docketed cases were bound by stipulation by the outcome of Utah Jojoba I Research v. Commissioner, supra.

(U.S. Agri), had been designed and entered into solely to provide a mechanism to disguise the capital contributions of limited partners as currently deductible expenditures.  The Court stated that the activities of the partnerships were "another example of efforts by promoters and investors in the early 1980's to reduce the cost of commencing and engaging in the farming of jojoba by claiming, inaccurately, that capital expenditures in jojoba plantations might be treated as research or experimental expenditures for purposes of claiming deductions under section 174."  Id.

As a result of Blythe II's TEFRA proceeding, petitioners were assessed tax deficiencies of $9,006 for 1982 and $503 for 1983, plus interest.  Subsequently, respondent issued notices of deficiency to petitioners, for 1982 and 1983, for affected items, determining that petitioners are liable for the additions to tax for negligence, under section 6653(a)(1) and (2), and a substantial understatement of tax, under section 6661, for 1982.  These additions to tax are the subject of the instant case.

The first issue is whether petitioners are liable for the additions to tax for negligence, under section 6653(a)(1) and (2), for both years at issue.  Section 6653(a)(1) imposes an addition to tax in an amount equal to 5 percent of an underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of rules or regulations.

Section 6653(a)(2) imposes another addition to tax in an amount equal to 50 percent of the interest due on the portion of the underpayment attributable to negligence or intentional disregard of rules or regulations.  Respondent's determinations in a notice of deficiency are presumed correct, and petitioners must establish otherwise.  Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933); cf. sec. 7491(c).[9]  Respondent determined that petitioners' underpayments were due to negligence.  Petitioners, therefore, have the burden of proving they were not negligent in deducting their share of the partnership's losses.  See <u>Estate of Mason v. Commissioner</u>, 64 T.C. 651, 663 (1975), affd. 566 F.2d 2 (6th Cir. 1977); <u>Bixby v. Commissioner</u>, 58 T.C. 757, 791 (1972); <u>Anderson v. Commissioner</u>, T.C. Memo. 1993-607, affd. 62 F.3d 1266 (10th Cir. 1995).

Negligence is defined as the failure to exercise the due care that a reasonable and ordinarily prudent person would exercise under like circumstances.  See <u>Anderson v. Commissioner</u>,

---

[9]     The Internal Revenue Service Restructuring & Reform Act of 1998, Pub. L. 105-206, sec. 3001, 112 Stat. 685, 726, added sec. 7491(c), which places the burden of production on the Secretary with respect to a taxpayer's liability for penalties and additions to tax in court proceedings arising in connection with examinations commencing after July 22, 1998.  Petitioners do not contend, nor is there evidence, that their examination commenced after July 22, 1998, or that sec. 7491 is applicable in this case.

62 F.3d at 1271; <u>Neely v. Commissioner</u>, 85 T.C. 934, 947 (1985); <u>Glassley v. Commissioner</u>, T.C. Memo. 1996-206.  The focus of inquiry is the reasonableness of the taxpayer's actions in light of his experience and the nature of the investment.  See <u>Henry Schwartz Corp. v. Commissioner</u>, 60 T.C. 728, 740 (1973); <u>Greene v. Commissioner</u>, T.C. Memo. 1998-101, affd. without published opinion 187 F.3d 629 (4th Cir. 1999); <u>Glassley v. Commissioner</u>, <u>supra</u>; <u>Turner v. Commissioner</u>, T.C. Memo. 1995-363.  Whether a taxpayer is negligent in claiming a tax deduction "depends upon both the legitimacy of the underlying investment, and due care in the claiming of the deduction."  <u>Sacks v. Commissioner</u>, 82 F.3d. 918, 920 (9th Cir. 1996), affg. T.C. Memo. 1994-217; see <u>Greene v. Commissioner</u>, <u>supra</u>.

A taxpayer may avoid liability for negligence penalties under some circumstances if the taxpayer reasonably relied on competent professional advice.  See <u>Freytag v. Commissioner</u>, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. on other issue 501 U.S. 868 (1991).  Such reliance, however, is "not an absolute defense to negligence, but rather a factor to be considered."  <u>Id.</u>  For reliance on professional advice to relieve a taxpayer from the negligence addition to tax, the taxpayer must show that the professional adviser had the expertise and knowledge of the pertinent facts to provide informed advice on the subject matter.  <u>Id.</u>

The facts pertinent to the instant case relating to the structure, formation, and operation of Blythe II are as discussed in Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6, with the exception of a few specific dates and dollar amounts. Blythe II was organized in December 1982 as a limited partnership for the described purpose of conducting research and development (R&D) involving the jojoba plant. The offering, dated November 30, 1982, provided for a maximum capitalization of $2,968,000 consisting of 350 limited partnership units at $8,480 per unit. Each unit required a cash downpayment of $2,500 and a non-interest-bearing promissory note in the principal amount of $5,980 payable in 10 annual installments with an acceleration provision in the event of default. The offering was limited to investors with a net worth (exclusive of home, furnishings, and automobiles) of $150,000, or investors whose net worth was $50,000 (exclusive of home, furnishings, and automobiles) and who anticipated that, for the taxable year of the investment, they would have gross income equal to $65,000, or taxable income, a portion of which, but for tax-advantaged investments, would be subject to a Federal income tax rate of 50 percent.

Petitioners' investment was for four limited partnership units, which required an initial down payment of $10,000 and execution of a promissory note for $23,920. Petitioners were to make payments of $2,600 each year from 1983 through 1985, $2,100

per year from 1986 through 1991, and a final payment of $3,520 in 1992 on the promissory note. It is not clear from the record whether petitioners made all the payments provided for in the promissory note.

The offering identified William Kellen (Mr. Kellen) as the general partner and U.S. Agri as the contractor for the R&D program under an R&D agreement. Additionally, a license agreement between Blythe II and U.S. Agri granted U.S. Agri the exclusive right to use technology developed for Blythe II for 40 years in exchange for a royalty of 85 percent of all products produced. The offering included copies of both the R&D agreement and the license agreement.[10] The R&D agreement was executed concurrently with the license agreement.

According to its terms, the R&D agreement expired upon the partnership's execution of the license agreement. Since the two were executed concurrently, amounts paid to U.S. Agri by the partnership were not paid pursuant to a valid R&D agreement but

---

[10] In the instant case, the Blythe II offering is included in evidence as a stipulated exhibit; however, the stipulated exhibit contains an incomplete copy of the R&D agreement that was attached to the original offering. To the extent that relevant facts are omitted because of the incomplete copy of the R&D agreement (or other incomplete pieces of evidence) in the instant case, the Court will rely on findings of fact in Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6, to which the partners of Blythe II agreed to be bound. It is petitioners' burden to establish the context in which their deductions were taken. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Bixby v. Commissioner, 58 T.C. 757, 791 (1972).

were passive investments in a farming venture under which the investors' return, if any, was to be in the form of royalties pursuant to the licensing agreement.  Thus, as this Court held in Utah Jojoba I Research v. Commissioner, supra, the partnership was never engaged in research or experimentation, either directly or indirectly.  Moreover, this Court found in Utah Jojoba I Research v. Commissioner that U.S. Agri's attempts to farm jojoba commercially did not constitute R&D, thereby concluding that the R&D agreement was designed and entered into solely to decrease the cost of participation in the jojoba farming venture for the limited partners through large up-front deductions for expenditures that were actually capital contributions.  The Court concluded further that the partnership was not involved in a trade or business and had no realistic prospect of entering into a trade or business with respect to any technology that was to be developed by U.S. Agri.

Petitioners contend that their investment in Blythe II was motivated solely by the potential to earn a profit.  Petitioners contend further that their reliance on the advice of their accountant, Mr. Meyers, should absolve them of liability for the negligence penalty in this case.  Petitioners also argue that, taking into account their experience and the nature of the investment in Blythe II, they exercised the due care that a reasonable and ordinarily prudent person would have exercised

under like circumstances. For the reasons set forth below, the Court disagrees with petitioners' contentions.

First, the principal flaw in the structure of Blythe II was evident from the face of the very documents included in the offering. A reading of the R&D agreement and the licensing agreement, both of which were included as part of the offering, plainly shows that the licensing agreement canceled or rendered ineffective the R&D agreement because of the concurrent execution of the two documents. Thus, the partnership was never engaged, either directly or indirectly, in the conduct of any research or experimentation. Rather, the partnership was merely a passive investor seeking royalty returns pursuant to the licensing agreement. Any experienced attorney capable of reading and understanding the subject documents should have understood the legal ramifications of the licensing agreement's canceling out the R&D agreement. However, petitioners never consulted an attorney in connection with this investment, nor did they read the offering themselves.

Secondly, in making their investment in Blythe II, petitioners relied on the advice of their accountant, Mr. Meyers; Mr. Sheets, who was a promoter for the partnership; and petitioner's brief visit to a local supermarket to determine whether any women's beauty products actually contained jojoba plant derivatives. At the time of trial Mr. Meyers was deceased;

therefore, the details in this record surrounding his advice to petitioners about Blythe II are scant. Petitioner provided Mr. Meyers with a copy of the offering and asked Mr. Meyers to review the same and advise petitioners whether or not to invest in Blythe II. Mr. Meyers advised petitioner that Blythe II "looked okay" to him and that the promoters, in petitioner's words, were "not trying to pull any funny stuff". Petitioner admitted that he sought Mr. Meyers' advice only with respect to the tax aspects of the investment. The record is devoid of any evidence to show that Mr. Meyers gave petitioners a written opinion about the investment, or that he conducted any independent research or consulted any type of agricultural or jojoba plant expert about the investment. The record in this case indicates that Mr. Meyers relied solely on the representations made in the offering in rendering his advice to petitioners.

Moreover, the record lacks evidence to show whether Mr. Meyers had any previous experience with the deductibility of research and development expenses at the time he advised petitioners about Blythe II. These types of expenses would have allowed petitioners certain tax benefits above and beyond what would have been provided by an ordinary business deduction. There is no evidence in the record to suggest that Mr. Meyers conducted any independent investigation to determine whether the specific R&D proposed to be conducted by or on behalf of the

partnership would have qualified for deductions under section 174.

The Court finds it notable that Mr. Meyers had no educational background or experience in agricultural pursuits in general, or jojoba plants in particular. At trial, petitioner suggested that Mr. Meyers had a "major" client who commercially produced alfalfa plants, and that this should have, in some way, granted Mr. Meyers specialized knowledge in the area of agricultural investments. When questioned by the Court about the similarities between jojoba plants and alfalfa plants, petitioner responded: "The principles are the same. It's a product that grows in the ground and you plant it, you harvest it, you worry about the logistics of feed, of fertilizer, of labor costs." Petitioner made such assertions while, nevertheless, admitting his knowledge that the important byproducts of alfalfa plants differ from the important jojoba byproducts touted in the Blythe II offering. Additionally, with all due respect to petitioner, the Court feels certain that such a generalized analysis of the agriculture business is not a reasonable or sufficient basis for assessing the commercial prospects of growing jojoba plants.

There is no evidence in the record to suggest that petitioners ever questioned Mr. Meyers about the facts and/or legal analysis upon which he based his recommendations. Further, the record is devoid of any evidence that petitioners asked Mr.

Meyers to explain the Blythe II investment to them, which would seem particularly important given the fact that petitioners opted to not read the offering.

The facts in this case are similar to those in <u>Glassley v. Commissioner</u>, T.C. Memo. 1996-206, in which this Court found that the taxpayers:

> acted on their fascination with the idea of participating in a jojoba farming venture and their satisfaction with tax benefits of expensing their investments, which were clear to them from the promoter's presentation.  They passed the offering circular by their accountants for a "glance" * * *

Similarly, petitioners acted on their enthusiasm for the potential uses of jojoba and acted with knowledge of the tax benefits of making the investment.  What little evidence this record contains about the nature of the advice given by Mr. Meyers suggests that such advice was highly generalized and based primarily on a mere cursory review of the offering rather than on independent knowledge, research, or analysis.  Petitioners failed to show that Mr. Meyers had the expertise and knowledge of the pertinent facts to provide informed advice on the investment in Blythe II.  See <u>Freytag v. Commissioner</u>, 89 T.C. at 888. Accordingly, petitioners failed to establish that their reliance on the advice of Mr. Meyers was reasonable or in good faith.  See <u>Glassley v. Commissioner</u>, <u>supra</u>.

The Court next examines petitioners' reliance on the advice of Mr. Sheets. Mr. Sheets had no background or expertise in agriculture or jojoba plants. In fact, the only other investment recommended to petitioners by Mr. Sheets had been a real estate investment. Also, because Mr. Sheets was a salesperson for this investment, he had a personal profit motive and, thus, a conflict of interest in advising petitioners to purchase the limited partnership interests. The advice petitioners allegedly received from Mr. Sheets fails as a defense to negligence because of his lack of competence to give such advice and the clear presence of a conflict of interest. See Rybak v. Commissioner, 91 T.C. 524, 565 (1988). Petitioners' reliance on the advice of Mr. Sheets was unreasonable under the circumstances.

Outside of Mr. Meyers and Mr. Sheets, petitioner's sole inquiry into the viability of this partnership's operations consisted of a visit to the cosmetics department of a local supermarket to determine whether, in fact, any women's beauty products actually contained extracts from the jojoba plant. Petitioner was apparently satisfied by his discovery that some women's beauty products did contain jojoba derivatives, and he made no further investigation. The Court finds it notable that the offering listed at least 15 "potential uses of jojoba nuts", only one of which was in certain cosmetics; yet petitioner chose to explore only one of those potential uses by visiting the

supermarket.   Some other potential uses listed in the offering were various lubricants for high-speed or high-temperature machinery, pharmaceuticals, cooking oils, disinfectants, polishing waxes, corrosion inhibitors, candles, animal feed supplements, and fertilizer.   Being a physician, it seems logical that petitioner would have had some access to information about the use of jojoba in the pharmaceutical arena; however, petitioner failed to pursue this possibility.   Petitioners' failure to investigate any of the other enumerated potential uses of jojoba plants was unreasonable under the circumstances.

Petitioners had no legal or agricultural background or training; yet they consulted no source of such information before agreeing to invest more than $30,000 in Blythe II.[11]  At a minimum, petitioners could have contacted an attorney to review the offering, provide legal advice surrounding the partnership, and explain the legal ramifications of the licensing agreement's canceling out the R&D agreement.   A reasonable and ordinarily prudent investor under the circumstances would have consulted an attorney.   Also, petitioners could have taken the simple step of contacting the agricultural department of a nearby college or university, or going to another reliable source, to inquire about

---

[11]   As stated previously, it is unclear from the record whether petitioners completed the payments provided for in the promissory note; however, at the very least, they paid $10,000 and legally committed themselves to pay the remaining $23,920.

the R&D of jojoba plants and their potential commercial usage, if any. Again, a reasonable and ordinarily prudent investor would have at least attempted to make this type of inquiry under the circumstances.[12]

Petitioners were not naive investors and should have recognized the need for independent professional advice. See LaVerne v. Commissioner, 94 T.C. 637, 652 (1990), affd. without published opinion 956 F.2d 274 (9th Cir. 1992), affd. in part without published opinion sub nom. Cowles v. Commissioner, 949 F.2d 401 (10th Cir. 1991); Glassley v. Commissioner, supra. In fact, the offering cautioned that prospective investors should not "construe this memorandum or any prior or subsequent communications as constituting legal or tax advice" and urged investors to "consult their own counsel as to all matters concerning this investment." The offering was replete with statements, including the cover page statement that "THIS OFFERING INVOLVES A HIGH DEGREE OF RISK", warning of tax risks involved with the investment and the highly speculative nature of the commercial viability of the jojoba plant. The offering contained inconsistent information, such as the statement on page

---

[12] In Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6, the Court noted that there were experimental jojoba plantations located at the University of California at Riverside, California, of which the general partner of Blythe II, Mr. Kellen, was aware.

that the general partner "has limited experience in dealing in Jojoba beans and is mainly relying on the R&D Contractor to develop technology and plant cultivars over the term of the R&D Agreement", contrasted with the statement on page 34 that the general partner "pioneered the development of the Blythe Airport as an alfalfa ranch and jojoba farming in Desert Center" and was "familiar with the development of jojoba, citrus, vineyards, alfalfa and asparagus." Such inconsistencies should have raised a healthy suspicion in the mind of a reasonable and ordinarily prudent investor, even one lacking any legal, tax, or agricultural background. However, petitioner testified that, before committing to invest some $33,000 in Blythe II, he did not even bother to read the offering, nor did he make an effort to have the investment explained to him. Moreover, petitioners failed to monitor the progress of their investment after purchasing the limited partnership interests.

The Court is mindful that the Court of Appeals for the Ninth Circuit (Ninth Circuit), the court to which an appeal in this case would lie, has held that experience and involvement of the general partner and the lack of warning signs could reasonably lead investors to believe they were entitled to deductions in light of the undeveloped state of the law regarding section 174. See Kantor v. Commissioner, 998 F.2d 1514 (9th Cir. 1993), affg. in part and revg. in part T.C. Memo. 1990-380. In its holding,

the Ninth Circuit explained that the Supreme Court's decision in Snow v. Commissioner, 416 U.S. 500 (1974), left unclear the extent to which research must be "in connection with" a trade or business for purposes of qualifying for an immediate deduction under section 174. However, in the instant case, the partnership was neither engaged in a trade or business nor conducting research and development, either directly or indirectly. Additionally, the experience in jojoba research and development of the general partner of Blythe II, Mr. Kellen, was questionable, at best, as evidenced by conflicting statements in the offering. Also, it is apparent from the evidence presented in this case that Mr. Kellen had minimal involvement in the partnership. Petitioners are precluded from relying upon a "lack of warning" as a defense to negligence, when there is no evidence that a reasonable investigation was ever made and the offering materials contained many warnings of the tax risks associated with the investment.

On this record, the Court finds that petitioners did not exercise the due care of reasonable and ordinarily prudent persons under the circumstances. Consequently, the Court holds that petitioners are liable for the negligence additions to tax under section 6653(a)(1) and (2) for each of the years at issue. Respondent is sustained on this issue.

The second issue is whether petitioners are liable for the addition to tax under section 6661(a) for a substantial understatement of tax for 1982. Section 6661(a), as amended by the Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, sec. 8002, 100 Stat. 1951, provides for an addition to tax of 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax for the taxable year. A substantial understatement of income tax exists if the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return, or $5,000. Sec. 6661(b)(1)(A). Generally, the amount of an understatement is reduced by the portion of the understatement that the taxpayer shows is attributable to either (1) the tax treatment of any item for which there was substantial authority, or (2) the tax treatment of any item with respect to which the relevant facts were adequately disclosed on the return. See sec. 6661(b)(2)(B). If an understatement is attributable to a tax shelter item, however, different standards apply. First, in addition to showing the existence of substantial authority, a taxpayer must show that he reasonably believed that the tax treatment claimed was more likely than not proper. Sec. 6661(b)(2)(C)(i)(II). Second, disclosure, whether or not adequate, will not reduce the amount of the understatement. Sec. 6661(b)(2)(C)(i)(I).

Substantial authority exists when "the weight of the authorities supporting the treatment is substantial in relation to the weight of authorities supporting contrary positions." Sec. 1.6661-3(b)(1), Income Tax Regs. Petitioners have failed to present evidence to show that substantial authority existed for the tax treatment of the Blythe II loss on their 1982 return.

Adequate disclosure of the tax treatment of a particular item may be made either in a statement attached to the return or on the return itself, if it is in accordance with the requirements of Rev. Proc. 83-21, 1983-1 C.B. 680. Sec. 1.6661-4(b) and (c), Income Tax Regs. The record indicates that petitioners did not attach a statement to their 1982 return disclosing the specific facts surrounding their Blythe II loss deduction. Rev. Proc. 83-21, supra, applicable to tax returns filed in 1983, lists information that would be deemed sufficient disclosure if listed on the return itself, without the necessity of attaching an additional statement to the return. However, none of the specific tax items referenced in Rev. Proc. 83-21, supra, are relevant to the instant case. If disclosure is not made in compliance with the regulations or the revenue procedure, disclosure on the return may still be adequate if sufficient information is provided to enable the Commissioner to identify the potential controversy involved. Schirmer v. Commissioner, 89 T.C. 277, 285-286 (1987). The mere claiming of the loss,

however, without further explanation, was not sufficient to alert respondent to the controversial section 174 deduction of which the partnership loss consisted. Petitioners have failed to present evidence to show that the relevant facts pertaining to their Blythe II loss deduction were adequately disclosed on their 1982 return.[13]

Finally, section 6661(c) provides the Secretary with the discretion to waive the section 6661(a) addition to tax if the taxpayer shows he acted with reasonable cause and in good faith. This Court reviews for abuse of discretion the Secretary's failure to waive the addition to tax for abuse of discretion. Martin Ice Cream Co. v. Commissioner, 110 T.C. 189, 235 (1998). Petitioners argue that they acted in good faith and reasonably relied upon the advice of Mr. Meyers in claiming the relevant loss. However, nothing in the record indicates that petitioners requested a waiver for good faith and reasonable cause under section 6661(c). In the absence of such a request, this Court cannot review respondent's determination for an abuse of discretion. Id. In any event, petitioners have not shown that they met the tests of reasonable cause and good faith.

Petitioners have failed to prove that they had substantial authority for their treatment of the partnership loss and that

---

[13] As noted earlier, even if an adequate disclosure had been made on the return, such a disclosure would not reduce the amount of the understatement attributable to a tax shelter item.

they adequately disclosed the relevant facts of that treatment. The understatement upon which the addition to tax was imposed was $10,467. The understatement is substantial because it exceeds the greater of $5,000 or 10 percent of the amount required to be shown on the return.[14] On this record, the Court holds that petitioners are liable for the addition to tax under section 6661(a) for a substantial understatement of tax for 1982. Respondent is sustained on this issue.

Finally, to the extent the Court has failed to address an argument of petitioners herein, the Court concludes the argument is without merit.

Decision will be entered

for respondent.

---

[14] The amount required to be shown on the return was $78,861, 10 percent of which equals $7,886.10.